UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARCUS ALLEN, M.D.,

      Plaintiff,

v.                    Case No: 2:18-cv-69-FtM-99MRM

FIRST UNUM LIFE INSURANCE
COMPANY, PROVIDENT LIFE AND
CASUALTY INSURANCE COMPANY,
and UNUM GROUP,

      Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on defendants' Motion to Dismiss Amended Complaint as "Shotgun" Pleading, or in the Alternative, Motion to Dismiss Counts IV, V, VI, VII, and VIII (Doc. #68) and defendants' Motion for Judgment on the Pleadings as to Counts I-III, filed on September 24, 2018. Responses (Docs. ##73, 74) and Replies (Docs. ##79, 80) have been filed. Plaintiff also submitted his Declaration with six exhibits attached (Doc. #74-1) to his Response to the Motion for Judgment on the Pleadings. For the reasons set forth below, the Motion for Judgment on the Pleadings is denied and the Motion to Dismiss is granted in part with leave to amend.

## I.  Background

Plaintiff Marcus Allen, M.D. filed this case to recover benefits allegedly due to him under five disability insurance policies.  Allen is a former diagnostic radiologist with Prospect Hill Radiology Group, P.C., where he was insured against disability pursuant to four individual[1] and one group[2] long-term "own occupation" disability income insurance policies[3] from defendants. Plaintiff specifically chose defendants'[4] policies because they provided for "total disability" if he was unable to perform the duties of his regular occupation ("own occupation") even if he were physically capable of working in another occupation.

---

[1] Defendant Provident Life and Casualty Insurance Company was the underwriter for the four individual policies that plaintiff purchased in 1986, 1987, and 1989 and the policies were individually marketed and sold to plaintiff by Provident insurance agent David B. Schultz.  (Doc. #74-1, ¶¶ 3, 7-10, 12.)

[2] The Group Policy, underwritten by defendant First Unum Life Insurance Company, insures only Dr. Allen and the other partners of Prospect Hill.  (Doc. #74-1, ¶ 59.)  Plaintiff was insured under the Group Policy beginning May 1, 2010.

[3] A large portfolio of defendants' "own occupation" policies is referred to in the Amended Complaint as a "Closed Block."  (Doc. #64, ¶ 133.)

[4] Plaintiff alleges that all defendants currently operate under the alter-ego "Unum" and are referred to collectively as "Unum" throughout the Amended Complaint.  (Doc. #64, ¶ 10.) Defendants do not challenge the grouping in their dismissal motions.  The Court will thus refer to them collectively as "defendants."

In May 2010, after 24 years as a radiologist and shareholder/partner with Prospect Hill[5], Dr. Allen began suffering changes in his vision which prohibited him from performing the acute visual analysis required of a diagnostic radiologist. Three separate physicians examined plaintiff the week of May 1-7, 2010, and ultimately diagnosed him with ocular degeneration, posterior vitreous detachment with retinal tear, bleed in his left eye, as well as significant floaters and visual disturbances of both eyes detrimentally impacting his visual field. (Doc. #64, ¶ 50.) Dr. Allen resigned from his radiology practice on June 23, 2010 and filed a claim for disability benefits with defendants claiming that he became totally disabled as of May 1, 2010. Defendants agreed plaintiff was totally disabled, and paid Dr. Allen monthly benefits for the next five years until August 31, 2015, when defendants determined that Dr. Allen failed to support the continued existence of his permanent disability with objective medical findings.

Defendants conducted periodic review of Dr. Allen's disability claim over the years, requesting his medical records and contacting his physicians. As part of the claim and under the policies' terms, defendants required plaintiff to apply for Social

---

[5] Dr. Allen became a shareholder/partner of Prospect Hill on January 1, 1989 and remained a shareholder until he withdrew in 2010 because of his disability. (Doc. 74-1, ¶ 51.)

Security disability benefits. If he was approved, the benefit that defendants paid would be reduced by the amount of Social Security benefits. As part of the review process, in 2013, the Social Security Administration (SSA) had plaintiff undergo a physical examination and several physicians and a vocational expert reviewed his medical records. The SSA determined that Dr. Allen was incapable of performing the occupation of diagnostic radiologist since June 2010, but defendants disagreed with that determination. Defendants therefore required plaintiff to undergo examinations with its chosen physicians, who found that Dr. Allen was no longer disabled.

Defendants terminated Dr. Allen's disability benefits in August 2015 on the ground that he was no longer disabled. Plaintiff has exhausted all appeals and this lawsuit followed. According to Dr. Allen, defendants failed to investigate his disability claims in good faith, failed to place his interests above their own, and arbitrarily terminated benefits despite his continued disability under the policies. Plaintiff alleges that his inexplicable benefit termination was fueled by Unum's scheme of terminating claims of high benefit disabled medical professionals insured under "own occupation" disability insurance policies in order to favorably impact Unum's bottom line and corporate share value. (Doc. #64, ¶¶ 133, 153, the "Scheme".)

The Court dismissed the initial Complaint (Doc. #1) as a shotgun pleading with leave to amend. (Doc. #62.) In its Opinion, the Court pointed out the defects in the Complaint so that plaintiff could properly avoid future shotgun pleadings. (Id., Sec. IV.) Plaintiff filed his Amended Complaint (Doc. #64) on August 22, 2018.

## II. Judgment on the Pleadings (Counts I-III)

Defendants' Motion for Judgment on the Pleadings asks the Court to decide whether one or more of plaintiff's state law claims seeking damages for breach of contract and breach of fiduciary duty are defensively preempted by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. (ERISA). Defendants assert that it is evident from the pleadings that Counts I-III are preempted by ERISA because the policies at issue are part of an ERISA-governed employee welfare benefit plan. Thus, defendants believe they are entitled to judgment as a matter of law on their first affirmative defense, as asserted in their Answer and supported by the exhibits attached thereto (Doc. #69).

Rule 12(c) of the Federal Rules of Civil Procedure provides that a party may move for judgment on the pleadings "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts.

We accept all the facts in the complaint as true and view them in the light most favorable to the nonmoving party." Interline Brands, Inc. v. Chartis Specialty Ins. Co., 749 F.3d 962, 965 (11th Cir. 2014) (internal citation omitted). See also Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 137 F.3d 1293, 1295 (11th Cir. 1998). "Judgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Horsley v. Feldt, 304 F.3d 1125, 1131 (11th Cir. 2002) (citations omitted).

A court adjudicating a motion for judgment on the pleadings considers the complaint and any attached exhibits, as well as the answer and any attached exhibits that are undisputedly authentic and central to the claim. Horsley v. Feldt, 304 F.3d 1125, 1134-35 (11th Cir. 2002). See also Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment."). "The Court has broad discretion to choose whether to covert the motion for judgment on the pleadings to a motion for summary judgment under Rule 56." Szabo v. Fed. Ins. Co., 2011 WL 3875421, *3 (M.D. Fla. Aug. 31, 2011).

## A. ERISA Preemption

To begin, the Court notes that under ERISA, two types of preemption may arise—conflict preemption or complete preemption.

Here, defendants rely on conflict preemption. (Doc. #69; Doc. #70, pp. 6-7.) "Conflict preemption, also known as defensive preemption, is a substantive defense to preempted state law claims." Conn. State Dental. Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1344 (11th Cir. 2009). "This type of preemption arises from ERISA's express preemption provision, § 514(a), which preempts any state law claim that 'relates to' and ERISA plan." Id. (citing 29 U.S.C. § 1144(a) (ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and are not exempt under section 1003(b) of this title.")).

Here, the parties dispute whether an applicable ERISA "plan" exists under which plaintiff seeks to recover benefits. Defendants argue that all four individual and the Group Policy are part of an employee welfare benefit plan. Plaintiff argues the policies are not ERISA plans. Thus, the first and central inquiry is whether the policies qualify as ERISA plan(s).

**B. Whether the Policies Qualify as ERISA Plans**

Section 1132(a) of ERISA provides, in relevant part, that a participant or beneficiary of a "plan" may bring suit "to recover benefits due to him under the terms of his plan...." 29 U.S.C. § 1132(a)(1)(B). The statute defines "plan" as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension

benefit plan." 29 U.S.C. § 1002(3); see also Kemp v. Int'l Business Machines Corp., 109 F.3d 708, 712 (11th Cir. 1997) ("The term 'plan' as used in ERISA means an 'employee welfare benefit plan' (or an employee pension benefit plan[ ) ] ....""). "Employee welfare benefit plan" specifically encompasses:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1). Whether there is an employee welfare benefit plan governed by ERISA is a question for the court. Stern v. Provident Life & Accident Ins. Co., 295 F. Supp. 2d 1321, 1324 (M.D. Fla. 2003).

The Eleventh Circuit has adopted a "flexible analysis for determining whether an ERISA plan is established, finding the existence of such plans where, from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Whitt v. Sherman Int'l Corp., 147 F.3d 1325, 1330 (11th Cir. 1998) (internal citations omitted). The plan,

fund, or program does not have to be written or otherwise formalized. <u>Donovan v. Dillingham</u>, 688 F.2d 1367, 1372 (11th Cir. 1982) (en banc). The employer does not have to play a role in the administration of the plan, fund, or program. <u>Id.</u> at 1374. The employer need not have complied with ERISA's fiduciary and reporting provisions.[6] <u>Id.</u> at 1372. That the employer did not intend for ERISA to govern is not determinative; what matters is whether the employer "intended to establish or maintain a plan to provide benefits to its employees as part of the employment relationship." <u>Anderson v. UNUM Provident Corp.</u>, 369 F.3d 1257, 1264 (11th Cir. 2004). A class of beneficiaries is unnecessary; "a plan covering only a single employee, where all other requirements are met, is governed by ERISA." <u>Williams v. Wright</u>, 927 F.2d 1540, 1545 (11th Cir. 1991). And that the provision of benefits involves a policy designed for an individual — not a group — is not determinative. <u>See</u> 29 U.S.C. § 1002(1) (defining "employee welfare benefit plan" without reference to group insurance).

Here, the Court cannot determine at the pleading stage whether the individual and group policies qualify as employee welfare benefit plans subject to ERISA. Based on a review of the documents attached to Defendants' Answer (Docs. ##69-1 6 69-11), as well as

---

[6] The Eleventh Circuit has referred to consideration of these factors as the "<u>Donovan</u> analysis." <u>Whitt</u>, 147 F.3d at 1330-31.

Dr. Allen's Declaration (Doc. #74-1) and attached exhibits A-F, the material facts are not clearly undisputed.[7]  For example, Dr. Allen states in his Declaration and submits documents in support that he paid all premiums for the individual policies.  Yet defendants submit documents that might show that premiums were billed to Prospect Hill, or that in consideration for Prospect Hill's assistance Dr. Allen received a discount, which could affect the analysis on whether ERISA applies (as well as the applicability of ERISA's safe-harbor provision).[8]

At bottom, the Answer and exhibits submitted by defendants are insufficient for defendants to meet their burden to prove as a matter of law that an ERISA plan exists to preempt plaintiff's state law claims under § 1144 at this stage of the proceedings.

---

[7] Plaintiff also challenges the authenticity of these exhibits.

[8] The "safe-harbor" provision exclude an employee insurance policy from ERISA coverage if:

(1)  The employer makes no contributions to the policy;

(2)  Employee participation in the policy is completely voluntary;

(3)  The employer's sole functions are, without endorsing the policy, to permit the insurer to publicize the policy to employees, collect premiums through payroll deductions, and remit them to the insurer; and

(4)  The employer receives no consideration in connection with the policy other than reasonable compensation for administrative services actually rendered in connection with payroll deduction.

29 C.F.R. § 2510.3-1(j).

Plaintiff has come forward with evidence that could directly refute defendants' assertions, all critical to the Court's determination of whether the state law claims are preempted. These issues need to be explored in discovery and the preemption issue will likely not be determined until summary judgment. Thus, the Motion for Judgment on the Pleadings is denied.

### III. Motion to Dismiss (Counts IV-VIII)

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. 1955. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate

factual support are entitled to no assumption of truth", Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

## A. Shotgun Pleading

Defendants first argue that Amended Complaint is due to be dismissed as a shotgun pleading because it violates Federal Rule 8's requirement that the complaint include a "short and plain statement of the claims." Defendants argue that plaintiff has not completely remedied the deficiencies in the "scheme" narrative the Court identified in its previous order of dismissal. The Court disagrees. Plaintiff has removed allegations that reference litigation tactics and findings by courts in other cases similar to plaintiff's and has removed its detailed summary of prior cases and litigation conduct. The Court believes that the Amended

Complaint complies with Federal Rule 8 and dismissal as a shotgun pleading will be denied.

**B. RICO Claims (Counts IV-VI)**

The federal RICO laws provide civil and criminal liability for persons engaged in a pattern of racketeering activity. <u>See</u> 18 U.S.C. §§ 1962-1964. Plaintiff brings three RICO counts against all defendants under subsections (a), (b), and (c) of the Act, 18 U.S.C. § 1962, which provides:

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . .to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

> (b) It shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

18 U.S.C. §§ 1962(a)-(c). To prevail on a civil RICO claim, a plaintiff must "establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering

activity that includes at least two racketeering acts." Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1348 (11th Cir. 2016). A civil RICO plaintiff must also show "(1) the requisite injury to business or property, and (2) that such injury was by reason of the substantive RICO violation." Id. (quoting Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1282–83 (11th Cir. 2006)). "The upshot is that RICO provides a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts indictable as mail fraud." Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 647 (2008).

Section 1961(1) contains a list of racketeering acts, which are otherwise called predicate acts. 18 U.S.C. § 1961(1); see also Beck v. Prupis, 529 U.S. 494, 497 n.2 (2000). That list includes bribery, mail fraud, wire fraud, and bank fraud. See 18 U.S.C. § 1961(1). Here, plaintiff alleges the predicate acts of mail and wire fraud for each count.

Civil RICO plaintiffs "must also satisfy the requirements of 18 U.S.C. § 1964(c)." Southeast Laborers, 444 F. App'x 401, 409 (11th Cir. 2011) (quoting Williams, 465 F.3d at 1282). Under this provision, "[a]ny person injured in his business or property *by reason of* a violation of section 1962 of this chapter may sue therefor." 18 U.S.C. § 1964(c) (emphasis added). The Supreme Court set forth the standard of establishing the "by reason of"

element of section 1964(c) in <u>Holmes v. Sec. Investor Protection</u> <u>Corp.</u>, 503 U.S. 258 (1992). Therein, the Supreme Court held that a "plaintiff must demonstrate that the defendant's violation was not only the "but for" cause of the plaintiff's injury but also its proximate cause." <u>Southeast Laborers</u>, 444 F. App'x at 409, citing <u>Holmes</u>, 503 U.S. at 268. This Court is charged with scrutinizing RICO claim causation at the pleading stage. <u>Williams</u> <u>v. Mohawk Indus., Inc.</u>, 465 F.3d 1277, 1282-83 (11th Cir. 2006).

**1. Causation**

Here, under each RICO count[9] plaintiff alleges the same injury and cause:

> Specifically, had [defendants] not perpetrated a company-wide strategy to wrongfully deny long term disability claims through the operation of an enterprise supported by investment of racketeering income, plaintiff's benefits would not have been terminated by [defendants].

(Doc. #64, ¶¶ 229, 252, 275.)

> Plaintiff suffered a cognizable 'investment injury' that flowed from the use of [defendants'] investment of racketeering income, in that [defendants] used such income to undercut competing disability insurers.

(<u>Id.</u>, ¶¶ 230, 253, 276.)

> Such conduct prevented Plaintiff from considering doing business with a wider variety of disability insurers with which to choose from, especially disability insurers that would have provided Plaintiff with quality service and honored their contractual obligations. Many

---

[9] Each RICO count incorporates paragraphs 7-162, which describe plaintiff's purchase of the policies, the disability claims and investigation, as well as the Scheme.

other insurers thereafter engaged Unum to handle their disability claims handling.

(Id., ¶¶ 231, 254, 277.) Plaintiff also alleges that as a result of defendants' activities he has "less or no disability income insurance coverage." (Id., ¶ 138.)

Defendants challenge the RICO claims on several grounds, including that plaintiff cannot meet the requirements of Section 1964(c), and therefore cannot establish the causation element of his RICO claims. The Court notes that it identified its concerns with causation in its dismissal of the initial Complaint, and some of these concerns remain. In the briefing, the parties focus their arguments on "proximate cause" rather than "but for" cause, but plaintiff needs to plausibly allege both to survive dismissal. See Southeast Laborers, 444 F. App'x at 409. Thus, for plaintiff to plead a civil RICO claim, he must plead facts sufficient to give rise to a reasonable inference that the claimed racketeering activity – here, the fraudulent scheme to deny legitimate disability claims, including plaintiff's, in order to increase profitability – was the but for and proximate cause of plaintiff's injuries.

The Supreme Court has said that "[p]roximate cause for RICO purposes ... should be evaluated in light of its common-law foundations; proximate cause thus requires some direct relation between the injury asserted and the injurious conduct alleged. A

link that is too remote, purely contingent, or indirect is insufficient." Hemi Grp. LLC v. City of New York, New York, 559 U.S. 1, 8 (2010) quoting Holmes, 503 U.S. at 1311 (internal alterations omitted). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." Ray, 836 F.3d at 1349. "Notably, the fact that an injury is reasonably foreseeable is not sufficient to establish proximate cause in a RICO action — the injury must be direct." Id. Thus, the Court considers the following facts of defendants' injurious conduct as set forth in the Amended Complaint.

The Amended Complaint alleges that the Scheme began in 1994 after plaintiff had purchased the individual policies in 1986, 1989, and 1989. (Doc. #64, ¶ 131.) Unum's employees, from claim handlers to the senior executives, are compensated at a higher rate for denying claims and penalized if they do not deny a sufficient number of claims. (Id., ¶ 132.) Unum implemented its Scheme by improperly targeting high reserve "own occupation" disability benefits claims for denial or termination that were part of a "Closed Block" of "own occupation" policies no longer sold by the companies, subjecting plaintiff and other similarly situated insureds to abusive and sham claims practices and procedures. (Id., ¶ 133.)

On or about June 23, 2010, Dr. Allen resigned from his partnership with Prospect Hill because of his visual impairment. (Doc. #64, ¶ 52.) Following his resignation, plaintiff informed Unum that he could no longer perform his medical specialty of diagnostic radiology because of his medical conditions, symptoms, restrictions and limitations, and he requested payment of disability benefits under the Policies. (Id., ¶ 53.) On June 28, 2010, Unum wrote to plaintiff, acknowledged his claim for benefits under the Policies and provided him with claim forms to complete and return. (Id., ¶ 54.)

On January 15, 2011, Unum accepted liability on Dr. Allen's claims stating that his restrictions and limitations were supported. Unum paid all monthly benefits to him for total disability due and owing (and continued to do so until August 2015) "in keeping with the terms of all five of his Policies." (Doc. #64, ¶ 59.) In addition, Unum waived Dr. Allen's premiums under his Policies and no longer required periodic payment of premiums. (Id., ¶ 60.)

On or about August 31, 2015, Unum informed Dr. Allen through letters dated August 31, 2015 and September 1, 2015 that it was terminating his disability benefits under all of his Policies. (Doc. #64, ¶ 104.) Unum's stated basis for terminating Dr. Allen's benefits was "[f]ollowing review of the Independent Medical Exams you recently attended, we have determined you are not disabled

according to the policies and benefits are not payable." (Id., ¶
105.)  At the time Unum terminated plaintiff's benefits, the total
monthly benefit under all policies was $26,537, which have
increased since that time. (Id., ¶¶ 106-10.)  Plaintiff appealed,
and Unum upheld its decision on February 24, 2016. (Id., ¶ 111-
12.)  In deciding to uphold its decision, Unum fraudulently stated
that plaintiff did not have ongoing restrictions and limitations
because he should have surgery for his conditions when the policies
do not require surgery. (Id., ¶ 125.)

    The Court finds that only the first injury is plausibly
alleged – that is, had defendants not perpetrated the Scheme,
plaintiff's benefits would not have been terminated.  However, the
Court finds that the time frame in which plaintiff suffered harm
from the Scheme is not from 1994 to the present, as alleged.  The
timeline of events and defendants' actions leading to the denial
of Dr. Allen's claims simply do not plausibly show that he
sustained an injury as a direct result of defendants purported
fraudulent scheme to deny legitimate disability claims at any time
prior to when his benefits were terminated.  The Court reaches
this conclusion keeping in mind that proximate cause for RICO
purposes requires a direct relation between the injury asserted
and the injurious conduct alleged, not a link that is too remote
or indirect. Hemi Grp., LLC, 559 U.S. at 8.

From 1994-2010 there are no allegations that defendant was denying legitimate disability claims in the Closed Block. The allegations regarding the Scheme and targeting of the Closed Block begin in 2011 when defendants' Annual Report showed that the Closed Block was performing poorly because the policies were no longer sold and premium income was in a constant state of decline. (Doc. #64, ¶ 142.) However, in 2011, plaintiff's claims for total disability were approved by Unum and in late 2011 Unum confirmed the severity of plaintiff's condition and placed it in the Extended Duration Unit for claims that are expected to persist. (Id., ¶ 65.) And Unum continued to pay plaintiff benefits until they were terminated in 2015. Accepting the alleged facts as true and viewing them in a light most favorable to plaintiff, even if a Scheme was being perpetrated from 2011-2015, there are no facts connecting the fraudulent Scheme to any particular acts perpetrated against plaintiff in denying his claim. And there has certainly been no showing of "some direct relation between the conduct and the injury" as required by the Eleventh Circuit. See Ray, 836 F.3d at 1349. The Amended Complaint only offers mere speculation, not plausible facts.

To state a RICO claim, plaintiff must allege that the violation caused damages. Southeast Laborers, 444 F. App'x at 409. Plaintiff was not damaged by the Scheme until his benefits were terminated. Therefore, the Court will dismiss that portion

of the three RICO claims which allege harm prior to August 31, 2015, the first date in which Unum announced the termination of benefits.

**2. RICO Enterprise**

Defendants argue that Counts IV (§ 1962(a)) and V (§ 1962(b)) fail because plaintiff has failed to allege the existence of an "enterprise" under RICO.

The Amended Complaint must allege the "conduct of an enterprise" and that the enterprise had a common goal, and that defendants participated in the operation or management of the enterprise itself. <u>Williams</u>, 465 F.3d at 1283-84. According to the RICO statute, an "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "The Supreme Court has instructed us that an association-in-fact enterprise must possess three qualities: 'a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" <u>Ray</u>, 836 F.3d at 1352 (quoting <u>Boyle v. United States</u>, 556 U.S. 944, 946 (2009)). "What is required is 'evidence of an ongoing organization, formal or informal, and ... evidence that the various associates function as a continuing unit.'" <u>Id.</u> (quoting <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981).

The Court finds that an enterprise has been adequately pled. The Amended Complaint alleges that Unum and its subsidiaries, as well as other independent insurers such as New York Life and John Hancock, along with non-employee medical consultants, were engaged in an enterprise which conducted a pattern of racketeering activity including mail and wire fraud. The alleged Scheme engaged in among the parties is detailed in the Amended Complaint. Plaintiff alleges that "[p]art of the income or proceeds that Provident, First Unum and The Unum Group obtained from Plaintiff through racketeering activity was used to acquire or maintain an interest in, or to operate, an enterprise as defined by 18 U.S.C. § 1961(4)." (Doc. #64, ¶ 223.) Therefore, the Motion to Dismiss Counts IV and V on this basis is denied.

### 3. Distinctiveness Requirement

Even if an association-in-fact enterprise has been adequately pled, "a defendant corporation cannot be distinct for RICO purposes from its own officers, agents, and employees when those individuals are operating in their official capacities for the corporation." Ray, 836 F.3d at 1355. Defendants argue that plaintiff's three RICO claims should be dismissed because Unum Group and its subsidiaries are not distinct, and actions which are attributed to their acting in concert cannot serve as a basis for RICO claims. Defendants rely on Ray v. Spirit Airlines, 836 F.3d 1340 (2016). Plaintiff responds that the Amended Complaint describes an

enterprise which includes a holding company, a parent corporation, its subsidiary, and other "unrelated entities" distinct from the RICO enterprise, thus satisfying the distinctiveness requirement.

The Amended Complaint alleges defendants' corporate structure as follows: The Unum Group operates as a holding and parent company of its subsidiaries First Unum Life Insurance Company and Provident Casualty Insurance Company. (Doc. #64, ¶ 14.) The Unum Group "is responsible for all claims handling for its subsidiaries including First Unum, Paul Revere[10] and Provident." (Id., ¶ 15.) "Upon information and belief, at all times since on or about July 1, 1999, all claims handling procedures and operations were prescribed in a unitary and coordinated fashion by Unum for all its subsidiaries and controlled companies, including First Unum, Paul Revere and Provident, as well as for any other companies for which Unum administers disability claims." (Id., ¶ 16.)

Plaintiff alleges that the RICO enterprise consists of "Unum and its subsidiaries, including First Unum, Paul Revere and Provident, and its common claims handling unit, as well as other independent insurers such as New York Life Insurance Company and John Hancock Mutual Life Insurance Company who use Unum's common claims handling unit and methods." (Doc. #64, ¶¶ 224, 246, 268.)

---

[10] Plaintiff alleges that Unum operated as a holding and parent company for Paul Revere, and is responsible for all claims handling for its subsidiaries, including Paul Revere.

Plaintiff states that Unum Group is responsible for handling the disability claims for New York Life and John Hancock. (<u>Id.</u>, ¶ 15.) Plaintiff also alleges upon information and belief that defendants "utilized the services of external, independent, non-employee medical consultants in the administration of Dr. Allen's claim who are also part of the enterprise." (<u>Id.</u>, ¶ 225, 247, 269.)

In <u>Ray</u>, the Eleventh Circuit explained the distinctiveness requirement:

> Significantly, to state a civil RICO claim, a plaintiff must establish a distinction between the defendant 'person' and the 'enterprise' itself. The Supreme Court has made it crystal clear that the racketeering enterprise and the defendant must be two separate entities. <u>Cedric Kushner Promotions, Ltd. v. King</u>, 533 U.S. 158, 161–62, 121 S. Ct. 2087, 150 L.Ed.2d 198 (2001); <u>see also</u> <u>United States v. Goldin Indus., Inc.</u>, 219 F.3d 1268, 1271 (11th Cir. 2000) (en banc) ('We now agree with our sister circuits that, for the purposes of 18 U.S.C. § 1962(c), the indictment must name a RICO person distinct from the RICO enterprise.'). This requirement arises from the statutory language making it "unlawful for any person employed by or associated with any enterprise" to engage in racketeering activities through that enterprise. 18 U.S.C. § 1962(c). It does not make sense for a person to employ or associate with himself. Thus, an enterprise may not simply be a 'person' referred to by a different name." <u>Cedric Kushner Promotions</u>, 533 U.S. at 161, 121 S. Ct. 2087.

> * * *

> We, too, hold that plaintiffs may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation because a corporation necessarily acts through its agents and employees.

Ray, 836 F.3d at 1355.

This case is similar to Ray, where the defendant "person" is a corporation and is alleged to have engaged in an enterprise with its officers, employees, and agents. The Ray court recognized that because a corporation can only act through its employees and agents, "the fact that it does so is insufficient to establish the existence of an enterprise." 836 F.3d at 1356 (further noting that "a defendant corporation cannot form a RICO enterprise with its own employees or agents who are carrying on the normal work of the corporation").

Here, the alleged enterprise consists of the corporation and its subsidiaries, other independent insurers New York Life and John Hancock, and non-employee medical consultants. Plaintiff argues that the entities and individuals have the requisite distinctiveness to form a RICO enterprise because he identifies actors which were not employed by defendants who were involved. However, there is no allegation (other than a conclusory statement) that the two independent insurers and non-employee medical consultants identified as "unrelated entities" were aware of the Scheme, and therefore "could not have been working toward the common purpose of committing fraud." Ray, 836 F.3d at 1356. In fact, there are no allegations concerning how New York Life and John Hancock assisted in facilitating the Scheme.

Furthermore, it is not clear from the Amended Complaint how the non-employee medical consultants participated in the Scheme (or that they were even aware of it). The only reference to medical consultants in the Amended Complaint is that two medical consultants were present at a May 2014 management level roundtable to determine whether Unum should offer Dr. Allen a settlement or buyout of his claim. (Doc. #64, ¶ 90.) However, it is not alleged whether these medical consultants were employees of Unum or not. The Court has only conclusory allegations that "non-employee" medical consultants were part of the enterprise. This is insufficient.

For purposes of this case, there is no distinction between the corporate person and the alleged enterprise, and this lack of distinction necessarily causes plaintiff's three RICO claims to fail as they did in Ray. 836 F.3d at 1357 ("Finally, while RICO was intended to be interpreted broadly, permitting plaintiffs to plead and enterprise consisting of a defendant corporation and its officers, agents, and employees acting within the scope of their employment would broaden RICO beyond any reasonable constraints."). Therefore, the Court will grant the Motion to Dismiss the three RICO counts on this basis. However, the Court will grant plaintiff leave to file a Second Amended Complaint if there is a good faith basis for further allegations to address the issue of distinctiveness. If plaintiff fails to do so, the three

RICO counts will be considered abandoned and the case will proceed on the remaining counts in the Amended Complaint (Doc. #64).

## C. Fraud Claims (Counts VII-VIII)

Count VII alleges "fraud as to statements and omissions regarding nature and quality of policies" and Count VIII alleges "fraud as to claims determinations."  In Florida, the elements of fraud are "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation."  Butler v. Yusem, 44 So. 3d 102, 105 (Fla. 2010).  Fraud claims are subject to Rule 9(b).  Fed. R. Civ. P. 9(b).

### 1. Count VII

In support of Count VII, plaintiff alleges two false statements: First, that Provident's agent[11] assured plaintiff that if he became disabled before he turned sixty-five that benefits would be paid for the remainder of his life.  And second, that other clients purchased the same polices and were paid disability benefits when those individuals became disabled.  (Doc. #64, ¶¶ 281-82.)  There are similar allegations about the Group Policy.  (Id., ¶¶ 290-91.)  Plaintiff alleges that these statements were

---

[11] Although not specified under Count VII, the Court assumes plaintiff is referring to Provident's agent David B. Schultz, a fact which is incorporated into Count VII.  (Doc. #64, ¶ 19.)

made even though defendants knew that claims from "own occupation" policies would be denied. Plaintiff alleges that he purchased the policies relying on these statements and did not look for disability insurance coverage from any other providers. He alleges he was damaged by loss of income and the lost opportunity to obtain disability coverage from another provider.

Defendants argue that Count VII fails as a matter of law because Unum paid plaintiff's disability claim from 2010-2015, contradicting plaintiff's fraud theory that defendants implemented a scheme to make any effort to deny and terminate claims such as plaintiff's. Defendants also argue that the two statements plaintiff identifies were not false when they were made. Finally, defendants assert that the fraud claim is made well beyond the 12-year period provided for in Florida's statute of repose for fraud.

Under Florida's statute of repose, Fla. Stat. § 95.031(2)(a), an action for fraud must be made "within 12 years after the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered." Normally, violations of the limitations period is an affirmative defense, "and a plaintiff is not required to negate an affirmative defense in his complaint." La Grasta v. First Union Sec., Inc., 358 F.3d 340, 345 (11th Cir. 2004) (quoting Tregenza v. Great Am. Commc'ns Co., 12 F.3d 717, 178 (7th Cir. 1993)). A dismissal may be granted, however, if it is "apparent from the face of the complaint" that the claim is

time-barred.  La Grasta, 358 F.3d at 845.  Here, the Amended
Complaint includes dates that allow the Court to determine on a
motion to dismiss whether the limitations period has expired.

The two statements occurred when plaintiff purchased the
individual policies in 1986, 1987, and 1989.  (Doc. #64, ¶¶ 17-
24, 283.)  Plaintiff argues that the fraud continued every year
he paid his premiums and that he relied on the fraud.  However,
as discussed above with respect to the RICO claims, plaintiff has
failed to make a connection between any fraudulent Scheme that was
perpetrated until his benefits were denied.  Thus, the Court finds
that the two statements allegedly made about the four individual
policies is barred by the 12-year statute of repose.  That said,
the Group Policy was sold to plaintiff in 2010, therefore any
alleged fraud that occurred when plaintiff was sold the Group
Policy would be outside the statute of repose.

The fraud claims regarding the Group Policy fail on other
grounds though.[12]  There are no plausible allegations that the two
statements were false when they were made, as it is plausible that
other policyholders like Dr. Allen were paid on their disability
claims.  And any assurances that Dr. Allen would be paid benefits
if he became disabled for the remainder of his life would surely

_____

[12] And even if the two statements made about the individual
policies were not outside the statute of repose, they would still
fail for the same reasons as the Group Policy.

qualify as opinion. "A claim of fraudulent misrepresentation is not actionable if premised on a mere opinion, rather than a material fact." <u>Thor Bear, Inc. v. Crocker Mizner Park, Inc.</u>, 648 So. 2d 168, 172 (Fla. 4th DCA 1994). It is the responsibility of the buyer of a product or service to investigate the truth of any "puffing" statements, as such declarations "do not constitute fraudulent misrepresentations." <u>Wasser v. Sasoni</u>, 652 So. 2d 411, 412 (Fla. 3d DCA 1995). The terms of the Policies (Docs. ##64-1 – 64-5) no doubt identified instances in which benefits could be terminated or reduced, some of which are identified in the Amended Complaint. <u>See</u> <u>Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.</u>, 262 F. Supp. 2d 1334, 1342 (S.D. Fla. 1999), <u>aff'd, sub nom.</u> <u>Eclipse Med., Inc. v. Am. Hydro-Surgical</u>, 235 F.3d 1344 (11th Cir. 2000) ("First and foremost, this District has clearly held that reliance on fraudulent representations is unreasonable as a matter of law where the alleged misrepresentations contradict the express terms of the ensuing written agreement.").

### 2. Count VIII

Count VIII (fraud as to claim determinations) fails because it does not identify what false statement(s) concerning a material fact was made. In fact, Count VIII seems to be a repeat of the circumstances surrounding Count VII. Thus, Count VIII fails for the same reasons as Count VII.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.  Defendants' Motion to Dismiss Amended Complaint as "Shotgun" Pleading, or in the Alternative, Motion to Dismiss Counts IV, V, VI, VII, and VIII (Doc. #68) is **GRANTED in part and DENIED in part**.  The Motion is denied as to Counts I-III, granted as to Counts IV-VI with leave to amend, and granted as to Counts VII and VIII with prejudice.  The Second Amended Complaint is due within **TWENTY-ONE (21) DAYS** of this Opinion and Order.

2.  Defendants' Motion for Judgment on the Pleadings as to Counts I-III (Doc. #70) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this __12th__ day of December, 2018.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record