UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARCUS ALLEN, M.D.,

    Plaintiff,

v.                                Case No: 2:18-cv-69-FtM-99MRM

FIRST UNUM LIFE INSURANCE
COMPANY, PROVIDENT LIFE AND
CASUALTY INSURANCE COMPANY,
and UNUM GROUP,

    Defendants.

## OPINION AND ORDER

This matter comes before the Court on defendants' Motion to Dismiss Counts IV, V, VI (RICO claims) of Plaintiff's Second Amended Complaint (Doc. #92) filed on January 23, 2019. Plaintiff filed a Response in Opposition (Doc. #95) on February 13, 2019. For the reasons set forth below, the Motion is granted because the plaintiff has failed to plausibly allege distinctiveness of a RICO enterprise.

**I.**

Plaintiff Marcus Allen, M.D. filed this case to recover benefits allegedly due to him under five disability insurance policies. Plaintiff alleges that his inexplicable benefit termination was fueled by Unum's[1] scheme of terminating claims of

---

[1] Plaintiff alleges that all defendants currently operate under the alter-ego "Unum" and are referred to collectively as

high benefit disabled medical professionals like him that are insured under "own occupation" disability insurance policies in order to favorably impact Unum's bottom line and corporate share value. (Doc. #87, ¶¶ 141-197, the "Scheme".) Plaintiff is currently proceeding on a seven-count Second Amended Complaint. (Doc. #87.) The Court previously addressed two prior Motions to Dismiss (Docs. ##62, 86) after which plaintiff amended his complaints. The Second Amended Complaint alleges claims for breach of contract (Counts I, II), breach of fiduciary duty (Count III), and RICO violations (Counts IV-VI). Relevant here, on December 12, 2018, the Court dismissed the RICO claims in part because plaintiff did not plausibly allege a distinction between the defendants and the enterprise itself. (Doc. #86.) The Court dismissed the RICO counts on this basis with leave to amend if there was a good faith basis for further allegations to address the issue of distinctiveness. (Id., p. 26.) The Court also dismissed the portion of the RICO claims which allege harm prior to August 31, 2015, the date in which Unum announced the termination of plaintiff's disability benefits. (Id., pp. 15-20.)

Defendants move to dismiss the RICO claims for failure to state a claim, arguing that they lack causation, fail the

---

"Unum" throughout the Amended Complaint. (Doc. #87, ¶ 10.) Defendants do not challenge the grouping in their dismissal motions. The Court will thus refer to them collectively as "defendants."

distinctiveness requirement, are not pled with particularity, and are subject to reverse preemption under the McCarran-Ferguson Act.

**II.**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. 1955. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth", Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal,

556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Plaintiff's relevant claims are all based on the Racketeer Influenced and Corrupt Organizations Act or "RICO". RICO claims must be pled with particularity pursuant to Fed. R. Civ. P. 9(b). "To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." Ambrosia Coal & Constr. Co. v. Pages Morales, 482 F.3d 1309, 1316–17 (11th Cir. 2007) (citing Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380–81 (11th Cir. 1997)).

**III.**

Plaintiff brings three RICO counts[2] against all defendants under subsections (a), (b), and (c) of the Act, 18 U.S.C. § 1962, which provide:

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . .to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> (b) It shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

18 U.S.C. §§ 1962(a)-(c). To prevail on a civil RICO claim, a plaintiff must "establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering

---

[2] Each RICO count incorporates paragraphs 7-197, which describe plaintiff's purchase of the policies, the disability claims and investigation, as well as the Scheme. The Court previously set forth in detail the facts leading up to the termination of plaintiff's benefits, as well as the Scheme. (Doc. #86.)

activity that includes at least two racketeering acts." Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1348 (11th Cir. 2016). Section 1961(1) contains a list of racketeering acts, which are otherwise called predicate acts. 18 U.S.C. § 1961(1); see also Beck v. Prupis, 529 U.S. 494, 497 n.2 (2000). That list includes bribery, mail fraud, wire fraud, and bank fraud. See 18 U.S.C. § 1961(1).

Here, plaintiff alleges the predicate acts of mail and wire fraud for each count and that the enterprise consists of external medical consultants, as well as "Unum and its subsidiaries, including First Unum, Paul Revere, and Provident, and its common claims handling unit, as well as other independent insurers such as New York Life Insurance Company and John Hancock Mutual Life Insurance Company who use Unum's common claims handling unit and methods." (Doc. #87, ¶¶ 259-60.)

"[A] defendant corporation cannot be distinct for RICO purposes from its own officers, agents, and employees when those individuals are operating in their official capacities for the corporation." Ray, 836 F.3d at 1355. Defendants argue that plaintiff's allegations that independent insurance companies and non-employee medical consultants are part of the enterprise are insufficient and conclusory. Plaintiff responds that the Amended Complaint describes an enterprise which includes a holding company, a parent corporation, its subsidiary, and other

"unrelated entities" distinct from the RICO enterprise, thus satisfying the distinctiveness requirement. The Court sets forth the allegations as they relate to defendants' corporate structure and defendants' relationship with other corporate entities and consultants during the Scheme.

**A. Defendants' Corporate Structure**

Since January 2007 to present, the Unum Group operated as a holding and parent company of subsidiaries First Unum, Paul Revere Life Insurance Company and Provident Companies, Inc., and is responsible for all claims handling for these subsidiaries. (Doc. #87, ¶ 14.) The Unum Group is also responsible for disability claims handling for several other insurance companies, including New York Life Insurance Company, John Hancock Mutual Life Insurance Company, and Metropolitan Life Insurance Company (referred to in the Second Amended Complaint as "Non-Unum Companies"). (Id., ¶ 15.) "Upon information and belief" at all times since on or about July 1, 1999, all claims handling procedures and operations were prescribed in a unitary and coordinated fashion by Unum for all its subsidiaries and controlled companies, including First Unum, Paul Revere, and Provident, as well as for the Non-Unum Companies. (Id., ¶ 16.)

**B. The Non-Unum Companies**

In the Second Amended Complaint, plaintiff added a new section that was not included in the prior complaints, titled "Use of the

Scheme by Non-Unum Companies." (Doc. #87, ¶¶ 189-97.) Because defendants attack the sufficiency of the pleading, the Court will set forth this section in its entirety:[3]

> 189. The Non-Unum Companies contracted with Unum through Administrative Services Agreements wherein Unum Group would receive financial remuneration from the Non-Unum Companies for aggressively administering the disability claims brought by insureds under policies underwritten by each of New York Life Insurance Company, John Hancock Life Insurance Company and Metropolitan Life Insurance Company.
>
> 190. The Non-Unum Companies specifically sought out and benefitted from Unum's aggressive administration of claims because Unum's conduct served to minimize their liability on legitimate claims.
>
> 191. Each of the Non-Unum Companies knew and was fully aware of the reputation held by Unum as a leader in aggressive disability claims administration.
>
> 192. Each of the entities comprising the Non-Unum Companies knew and was fully aware that through the direct conduct perpetrated by Unum in connection with administration and ultimate termination of legitimate disability claims, the Non-Unum Companies' liabilities would be reduced.
>
> 193. Each of the entities comprising the Non-Unum Companies contracted Unum to administer their disability claims handling with knowledge of Unum's claims denial strategy and with the specific intent that Unum deny the vast majority of outstanding disability claims in order to minimize their liability on legitimate claims.
>
> 194. Each of the entities comprising the Non-Unum Companies turned a blind eye to the fraudulent conduct exhibited by Unum toward insureds/contracting parties under disability insurance contracts with each of the Non-Unum Companies.

---

[3] This section is incorporated by reference into each RICO count.

195. In so doing, the Non-Unum Companies greatly increased the scope of Unum's Scheme and the overall enterprise.

196. Failure to act to forestall, suspend and/or stop Unum from continuing the conduct comprising Unum's Scheme while all the while benefitting from the Scheme amounts to a facilitation of such Scheme.

197. The continuation of Administrative Services Agreements by and between each of the Non-Unum Companies for such aggressive and unlawful claim administration under their respective policies amounts to a facilitation of such Scheme.

**C. External, Independent Non-Employee Medical Consultants**

Plaintiff also alleges that external, non-employee medical consultants were part of the enterprise. The entirety of plaintiff's allegations in this regard are:

> 260., 283., 308.[4] Provident, First Unum and The Unum Group utilized the services of external, independent, non-employee medical consultants in the administration of Dr. Allen's claim who are also part of the enterprise.
>
> 261., 284., 309. Upon information and belief, Unum's external, independent, non-employee medical consultants were aware of Unum's fraudulent claims handling practices and assisted Unum in furthering the denial of Dr. Allen's claims by tailoring their medical reports to include bases for Unum to deny Dr. Allen's legitimate disability claims.
>
> . . .
>
> 285. Such external independent, non-employee medical consultants received monetary compensation for their services to Unum.
>
> 286. Such external independent, non-employee medical consultants logically linked their continued receipt of work from Unum to opinions rendered against insureds and

---

[4] The following two allegations are included verbatim under all three RICO counts.

- 9 -

in favor of Unum's claim position of not disabled. By
not conducting fair and impartial review of records and
physical examinations of insureds sent to them by Unum,
such independent, non-employee medical consultants have
facilitated and fostered the Scheme perpetrated by Unum.

**D. The Law and its Application**

In Ray, the Eleventh Circuit explained the distinctiveness requirement:

> Significantly, to state a civil RICO claim, a plaintiff must establish a distinction between the defendant 'person' and the 'enterprise' itself. The Supreme Court has made it crystal clear that the racketeering enterprise and the defendant must be two separate entities. Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161–62, 121 S. Ct. 2087, 150 L.Ed.2d 198 (2001); see also United States v. Goldin Indus., Inc., 219 F.3d 1268, 1271 (11th Cir. 2000) (en banc) ('We now agree with our sister circuits that, for the purposes of 18 U.S.C. § 1962(c), the indictment must name a RICO person distinct from the RICO enterprise.'). This requirement arises from the statutory language making it "unlawful for any person employed by or associated with any enterprise" to engage in racketeering activities through that enterprise. 18 U.S.C. § 1962(c). It does not make sense for a person to employ or associate with himself. Thus, an enterprise may not simply be a 'person' referred to by a different name." Cedric Kushner Promotions, 533 U.S. at 161, 121 S. Ct. 2087.
>
> * * *
>
> We, too, hold that plaintiffs may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation because a corporation necessarily acts through its agents and employees.

Ray, 836 F.3d at 1355.

In this case, as in Ray, the defendant corporations, together with their officers, agents, and employees are alleged to have

- 10 -

engaged in an enterprise, which is insufficient.  Ray, 836 F.3d at 1356 (further noting that "a defendant corporation cannot form a RICO enterprise with its own employees or agents who are carrying on the normal work of the corporation").  And as the Court noted in its previous Opinion and Order dismissing the Amended Complaint, plaintiff had only included conclusory statements that the independent insurers and non-employee medical consultants were aware of the Scheme, and therefore "could not have been working toward the common purpose of committing fraud."  Id.

In order to address this problem, plaintiff added a new section - "Use of the Scheme by Non-Unum Companies."  (Doc. #87, ¶¶ 189-97.)  However, these allegations are wholly conclusory. There are no specifics as to the Non-Unum Companies' involvement – no specific statements, documents, misrepresentations, time, place, or person(s) responsible for the statement.  The Court finds the allegations of the Non-Unum Companies' general involvement in a RICO enterprise are insufficient to provide notice of the claims against defendants, or to meet the heightened requirements of Rule 9.[5]

---

[5] Plaintiff's conclusory allegations carried over into his brief where he states, "[t]here is no other reasonable explanation of the Non-Unum Companies' selection of Unum to handle their claims except that each of the Non-Unum Companies turned a blind eye to the fraudulent conduct exhibited by Unum towards insureds under disability insurance contracts."  (Doc. #95, p. 10.)  Plaintiff's failure to come up with any other reasonable explanation is far from satisfying Rule 9(b)'s particularity requirement.

The external non-employee medical consultants fail to establish distinctiveness for the same reasons. The allegations are wholly conclusory and alleged "upon information and belief" and fail to allege with any particularity what role the medical consultants played, the specific conduct attributable to the medical consultants that caused injury, or that they were even aware of the Scheme. The Court has only conclusory allegations that non-employee medical consultants were part of the enterprise. This is insufficient.

For purposes of this case, there is no distinction between the corporate person and the alleged enterprise, and this lack of distinction necessarily causes plaintiff's three RICO claims to fail as they did in Ray. 836 F.3d at 1357 ("Finally, while RICO was intended to be interpreted broadly, permitting plaintiffs to plead and enterprise consisting of a defendant corporation and its officers, agents, and employees acting within the scope of their employment would broaden RICO beyond any reasonable constraints."). Therefore, the Court will grant the Motion to Dismiss the three RICO counts on this basis. Because plaintiff has been afforded the opportunity to amend, the three RICO counts will be dismissed without leave to amend.[6]

---

[6] Because the Court has found that the RICO counts fail for lack of distinctiveness, the Court will not address defendants' other arguments for dismissal.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Defendants' Motion to Dismiss Counts IV, V, VI (RICO claims) of Plaintiff's Second Amended Complaint (Doc. #92) is **GRANTED.** Counts IV, V, and VI are dismissed without leave to amend.

**DONE and ORDERED** at Fort Myers, Florida, this __26th__ day of March, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record