```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                         FORT MYERS DIVISION
```

MARCUS ALLEN, M.D.,

       Plaintiff,

v.                                CASE NO. 2:18-cv-69-FtM-99NPM

FIRST UNUM LIFE INSURANCE
COMPANY, PROVIDENT LIFE AND
CASUALTY INSURANCE COMPANY
and UNUM GROUP,

       Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on Defendants' Motion for Judgment on the Pleadings for Count III Breach of Fiduciary Duty of the Second Amended Complaint (Doc. #114) filed on December 26, 2019. Plaintiff filed an Opposition to Defendants' Motion (Doc. #121) on January 8, 2020. For the reasons set forth below, the motion is granted.

**I.**

This case is before the Court on Plaintiff's seven-count Second Amended Complaint alleging claims for breach of contract (Counts I, II), breach of fiduciary duty (Count III), and RICO violations (Counts IV-VI). (Doc. #87.) The Court previously granted Defendants' Motion to Dismiss Counts IV, V, VI (RICO claims) of Plaintiff's Second Amended Complaint. (Docs. ##92,

103). Defendants now seek judgment on the pleadings on the breach of fiduciary duty claim in Count III. Defendants argue that regardless of whether New York or Florida law applies, the pleadings establish there was no fiduciary duty owed by any Defendant to the insured in connection with the insured's first-party claim. (Doc. #114, p. 1.)  Plaintiff, on the other hand, contends that both Florida and New York law impose a fiduciary duty upon all Defendants in a first-party claim where there is a "special relationship of trust and confidence" with the insured. Plaintiff asserts that such a relationship is sufficiently alleged in the Second Amended Complaint and supporting exhibits, and therefore the motion must be denied. (Doc. #121, p. 2.)

**II.**

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "Judgment on the pleadings is proper when there are no material facts in dispute, and the moving party is entitled to judgment as a matter of law" based on the substance of the pleadings and any judicially noticed facts. Palmer & Cay, Inc. v. Marsh & McLennan Cas., Inc., 404 F.3d 1297, 1303 (11th Cir. 2005). See also Interline Brands, Inc. v. Chartis Spec. Ins. Co., 749 F.3d 962, 965 (11th Cir. 2014). The Court may consider the complaint and any exhibits attached thereto, as well as the answer

2

and any attached exhibits that are undisputedly authentic and central to the claim. Horsley v. Feldt, 304 F.3d 1125, 1134-35 (11th Cir. 2002); Eisenberg v. City of Miami Beach, 54 F. Supp. 3d 1312, 1319 (S.D. Fla. 2014). All facts alleged in the complaint are viewed in the light most favorable to the nonmoving party. Cunningham v. Dist. Attorney's Office for Escambia Cnty., 592 F.3d 1237, 1255 (11th Cir. 2010). "Legal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011).[1]

### III.

Plaintiff Marcus Allen (Plaintiff or Dr. Allen) is a former Diagnostic Radiologist and partner in Prospect Hill Radiology Group, P.C. located in Syracuse, New York. From 1986 through 1989, Plaintiff purchased four individual disability insurance policies (the Individual Policies) from Provident Life & Casualty Insurance Company (Provident). (Doc. #87, ¶¶ 21-28; Docs. ##87-1, 87-2, 87-

---

[1] The Court strikes Plaintiff's Declarations (Docs. ##43-1; 74-1), which were not attached to the Second Amended Complaint or any other pleading, and declines to convert the motion into a summary judgment motion. Plaintiff's arguments based upon the summary judgment legal standard are therefore misplaced. Frattallone v. Black Diamond Coating, Inc., No. 8:14-cv-2818-T-33TBM, 2015 U.S. Dist. LEXIS 13904, at *4, 6 (M.D. Fla. Feb. 5, 2015) (declining to convert defendants' motion for judgment on the pleadings into a motion for summary judgment, noting "[t]he court has a broad discretion when deciding whether to treat a motion [for judgment on the pleadings] as a motion for summary judgment . . ." ). As stated above, however, the facts alleged in the Second Amended Complaint are viewed in the light most favorable to Dr. Allen as the non-moving party.

3, 87-4.)  In 2005, Plaintiff became part of a work-related group disability insurance policy (the Group Policy) issued by First Unum Life Insurance Company (First Unum). (Id., ¶¶ 36-37; Doc. #87-5.)  All five policies (collectively "the Policies") provided "own occupation" disability income insurance coverage during the relevant time periods.[2]  Claims made under the Policies were administered by Unum Group (Doc. #87, ¶ 14), and Plaintiff alleges in summary fashion that the three defendants are alter egos of each other.  (Id., ¶ 10).

In May 2010, Dr. Allen began suffering changes in his vision which prevented him from performing the acute visual analysis required of a diagnostic radiologist.  (Doc. #87, ¶¶ 47-49.)  Dr. Allen was examined by three separate physicians and was ultimately diagnosed with ocular degeneration, posterior vitreous detachment with retinal tear, and bleeding in his left eye, as well as significant floaters and visual disturbances in both eyes detrimentally impacting his visual field. (Id., ¶ 50.)  Dr. Allen resigned from his radiology practice on June 23, 2010, and filed a claim for disability benefits with Defendants asserting that he became totally disabled as of May 1, 2010. (Id., ¶¶ 51-55.)

---

[2] The Group Policy was ultimately changed from an "own occupation" policy to an "any occupation" policy. (Id., ¶ 68.)

4

Defendants agreed Plaintiff was totally disabled, and paid Dr. Allen monthly benefits pursuant to the Policies for the next five years. On August 31, 2015, however, Defendants determined that Dr. Allen failed to support the continued existence of his permanent disability with objective medical findings. (Id., ¶¶ 56-57, 59, 113.) While continuing to pay disability benefits, Defendants requested Dr. Allen's medical records as part of periodic medical reviews, and Dr. Allen was required to apply for Social Security disability benefits. (Id., ¶¶ 70, 72, 76, 105.) The Social Security Administration (SSA) determined that Dr. Allen was incapable of performing the occupation of diagnostic radiologist since June 2010, but that he could perform other work. (Doc. #87, ¶¶ 77, 101-102.)

Defendants thereafter required plaintiff to undergo independent medical examinations (IMEs) with its chosen physicians. Defendants used the IMEs to find that Dr. Allen was no longer disabled. (Id., ¶¶ 105 106, 110, 113-114.) Although Dr. Allen's field of vision never improved, Defendants determined that he could return to his own occupation as a Diagnostic Radiologist, and therefore terminated his benefits under the Policies. (Id., ¶¶ 114, 129, 134.)

In Count I, Dr. Allen sues Provident and the Unum Group for breach of the Individual Policies contracts. (Doc. #87, ¶¶ 198-218.) In Count II, Dr. Allen sues First Unum and the Unum Group

5

for breach of the Group Policy contract. (Id., ¶¶ 219-240.) Neither of these claims are currently before the Court.

In Count III, Dr. Allen alleges that the termination of his benefits under the Policies constituted a breach of Defendants' fiduciary duty to him. (Doc. #87, ¶¶ 246-248.) Specifically, Plaintiff asserts that he had a fiduciary relationship with all three Defendants, and that this fiduciary relationship required all Defendants to place Plaintiff's interests above their own in handling his claim for benefits under the Policies. (Id., ¶ 244.) Plaintiff asserts that the fiduciary duties included the duty to ethically handle the claims, which in turn included the duty to disclose all facts under which benefits could be available and all facts known to Defendants that would support a finding of benefits coverage.[3] (Id., ¶ 245.)

**IV.**

A federal court exercising diversity jurisdiction applies the choice of law rules for the state in which it sits. Manuel v. Convergys Corp., 430 F.3d 1132, 1139 (11th Cir. 2005) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)). Thus, Florida choice of law rules apply to determine the governing state law for the state law

---

[3] Plaintiff's Second Amended Complaint does not, however, identify any facts which should have been disclosed. See (Doc. #87.)

6

claims, including Count Three.  Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc., 485 F.3d 1233, 1240 (11th Cir. 2007).

Plaintiff and Defendants identify New York and Florida as the two States whose substantive law may govern, but none of the parties take a firm position as to which State's law should be applied.  Rather, the parties assert either that there is a fiduciary duty established under either Florida and New York law (Plaintiff's position), or that a fiduciary duty does not exist under either New York or Florida law (Defendants' position).

The Court agrees that the determination of the existence of a fiduciary duty for purposes of a motion for judgment on the pleadings will be the same under Florida and New York law. Therefore, the Court need not at this time determine whether New York or Florida law governs the state law claims.  E.g., United States v. Cont'l Cas. Co., 512 F.2d 475, 477 (5th Cir. 1975); Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378, 1388 (11th Cir. 1988).

**V.**

Defendants contend that Plaintiff has failed to state a claim for breach of fiduciary duty because under either Florida or New York law neither an insurer nor an insurance holding company has a fiduciary duty to an insured in connection with a first-party claim.  (Doc. #114, p. 6.)  Plaintiff responds that while this is the general rule, the operative pleadings sufficiently allege

7

facts which establish a "special relationship of trust and confidence" between Dr. Allen and Defendants, and therefore a fiduciary duty has been established for purposes of the motion. (Doc. #121, p. 2.)

In Florida, a cause of action for breach of fiduciary duty requires "the existence of a fiduciary duty and the breach of that duty such that it is the proximate cause of the plaintiff's damages." Gracey v. Eaker, 837 So. 2d 348, 353 (Fla. 2002). Similarly, in New York "'the elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendants misconduct.'" Palmetto Partners, L.P. v. AJW Qualified Partners, LLC, 2011 NY Slip Op. 3043, 83 A.D.3d 804, 807, 921 N.Y.S.2d 260 (App. Div. 2nd Dept.), quoting Rut v. Young Adult Inst., Inc., 2010 NY Slip Op. 4764, 74 A.D.3d 776, 777, 901 N.Y.S.2d 715 (App. Div. 2nd Dept.). Therefore, the laws of both States require Plaintiff to demonstrate the existence of a fiduciary duty.

New York law describes a fiduciary relationship as follows:

> A fiduciary relationship arises when one is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation. It is grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions. A conventional business relationship, without more, is insufficient to create a fiduciary relationship. Rather, a plaintiff must make a showing of "special circumstances" that could have

> transformed the parties' business relationship to a fiduciary one, such as control by one party of the other for the good of the other. A fiduciary relationship may exist when one party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge, but not in an arm's-length business transaction involving sophisticated business people.

Saul v. Cahan, 153 A.D.3d 947, 949, 61 N.Y.S.3d 265, 268 (2017) (citations and internal punctuation omitted.) See also In re Eurospark Indus., Inc., 288 B.R. 177, 183 (Bankr. E.D.N.Y. 2003) (concluding that no fiduciary relationship is created in the first-party insurance context, which simply involves the contractual obligation to pay claims or benefits).

Similarly, Florida law distinguishes between normal business dealings and fiduciary relationships. "[I]n the usual creditor-debtor relationship, a fiduciary duty does not arise and allegations of superior knowledge of a party's financial condition are generally insufficient to transform the creditor-debtor relationship into a fiduciary relationship." Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp., 850 So. 2d 536, 540-41 (Fla. 5th DCA 2003). Florida law describes a fiduciary relationship as one of "trust and confidence," that is, "where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused." Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc., 842 So. 2d 204, 207-08 (Fla. 3d DCA 2003) (citations omitted.) "Fiduciary relationships may be implied in law and such relationships are 'premised upon the specific factual

9

situation surrounding the transaction and the relationship of the parties.'" Id.

Florida law requires "special circumstances" to convert a normal business relationship into a fiduciary relationship. For example:

> A bank and its customers generally deal at arm's-length as creditor and debtor, and a fiduciary relationship is not presumed. A fiduciary relationship may arise, however, under special circumstances where "the bank knows or has reason to know that the customer is placing trust and confidence in the bank and is relying on the bank so to counsel and inform him These special circumstances include instances where the lender "takes on extra services for a customer, receives any greater economic benefit than from a typical transaction, or exercises extensive control.
>
> While a contractual relationship between the parties is not required to form a fiduciary relationship, a party must be "under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relation." Doe v. Evans, 814 So.2d 370, 374 (Fla.2002) (quoting Restatement (Second) of Torts § 874 cmt. a.) (emphasis added).

Bldg. Educ. Corp. v. Ocean Bank, 982 So. 2d 37, 40–41 (Fla. 3d DCA 2008) (citations and internal punctuation omitted). The burden of proving such a fiduciary relationship is on the party asserting it. Orlinsky v. Patraka, 971 So. 2d 796, 800 (Fla. 3d DCA 2007).

Thus, while an insurer and an insured do not normally enter into a fiduciary relationship in connection with a first-party claim, the relevant law does not preclude such a relationship upon a showing of appropriate facts. Plaintiff argues that the Second Amended Complaint alleges facts sufficient to establish "special

10

circumstances" which give rise to a fiduciary relationship, and hence a fiduciary duty, as to all three Defendants. Specifically, Plaintiff relies upon four facts alleged in the Second Amended Complaint to establish a fiduciary relationship, and thus a fiduciary duty: (1) representations by First Unum, Provident and The Unum Group to the public and to Plaintiff; (2) the acceptance of Plaintiff's premium payments for disability insurance coverage for greater than 20 years; (3) Defendants' responsibility to administer claims for benefits fairly; and (4) reliance upon Defendants' expertise and superior knowledge in the application for Social Security benefits and the assistance provided in that process. (Doc. #87, ¶¶ 72, 74, 242.)  The Court addresses each in turn.

**(1)  Representations by Defendants**

The Second Amended Complaint fails to allege any facts showing Defendants made representations to the public which could create "special circumstances" with plaintiff above and beyond an arms-length insurer-insured relationship.  Therefore, statements to the public are not a basis from which a special relationship can be established.

With respect to representations Defendants made to Plaintiff, the Second Amended Complaint does set forth statements made by Provident's agent, David B. Schultz, when the insurance relationship was initially established.  In particular, Dr. Allen

11

alleges he purchased the Individual Policies, and cancelled previously purchased individual policies, based on the representations of Mr. Schultz. Mr. Schultz advised Plaintiff that Provident's disability insurance policies were "the 'Mercedes-Benz' of disability insurance and the best money could buy" because benefits would be provided if Dr. Allen became disabled and could not work as a Diagnostic Radiologist, even if he could work in another capacity. (Doc. #87, ¶¶ 19-20.) After these statements, Dr. Allen purchased two Individual Policies in 1986, purchased an additional Individual Policy in 1987, and purchased another Individual Policy in 1989. (Id., ¶¶ 23-24, 27-28.)

An insurance agent certainly has some responsibilities to a potential insured. "An agent is required to use reasonable skill and diligence, and liability may result from a negligent failure to obtain coverage which is specifically requested or clearly warranted by the insured's expressed needs." Warehouse Foods, Inc. v. Corporate Risk Mgmt. Servs., Inc., 530 So.2d 422, 423 (Fla. 1st DCA 1988). "This general duty requires the agent to exercise due care in correctly advising the insured of the existence and availability of particular insurance, including the availability and desirability of obtaining higher limits, depending on the scope of the agents undertaking." Adams v. Aetna Cas. & Sur. Co., 574 So.2d 1142, 1155 (Fla. 1st DCA 1991). There is no duty, however,

12

to ensure that a potential insured is "enrolled in the most financially appropriate insurance contract for him." Semerena v. Dist. Bd. of Trustees of Miami Dade Coll., 282 So. 3d 974, 977 (Fla. 3d DCA 2019).

Here, there is no allegation that the "own occupation" policies were inappropriate for Dr. Allen, or that such policies did not provide the coverage requested by plaintiff and represented by Mr. Schultz. Indeed, the Second Amended Complaint affirmatively alleges that the Individual Policies provided Dr. Allen with "own occupation" disability coverage. (Doc. #87, ¶¶ 51, 56, 59, 113.) Further, Plaintiff's Second Amended Complaint lacks any facts demonstrating that "special circumstances" existed which caused Plaintiff to repose confidence in Mr. Shultz which was accepted by Mr. Schultz, or that Plaintiff's confidence had been acquired and abused by Mr. Schultz. Susan Fixel, Inc., 842 So. 2d at 207–08; Saul, 153 A.D.3d at 949. The Court finds that the allegations in the Second Amended Complaint are insufficient to support the existence of a fiduciary relationship between Plaintiff and Provident based on the representations of Mr. Schultz.

In addition to Provident, Plaintiff alleges defendants First Unum and the Unum Group made representations to him that created a special relationship of trust and confidence amounting to a fiduciary relationship. (Doc. #87, ¶ 242.) But the Second Amended Complaint provides no factual allegations to show Dr. Allen

13

received, reviewed, or relied upon materials or representations from defendants First Unum or the Unum Group in his decision to procure disability insurance. See Orlinsky, 971 So. 2d at 800.

The Court finds that the pleadings do not plausibly establish "special circumstances" which show Dr. Allen and Defendants had a relationship beyond that of an arm's length business transaction normally present in the marketplace. Bldg. Educ. Corp., 982 So. 2d at 40-41; Saul, 153 A.D.3d at 949. As such, the Court finds the representations alleged to have been made by Defendants do not support the existence of a fiduciary relationship.

**(2) Length of Insurance Relationship**

Plaintiff asserts that the length of Defendants' acceptance of Plaintiff's premium payments for disability insurance coverage created a fiduciary relationship. (Doc. #87, ¶ 242; Doc. #121, p. 6.) Specifically, Plaintiff alleges that Unum Group accepted his premium payments for more than twenty years, and as one who "manages" another's money, Unum Group owed a fiduciary duty to plaintiff Dr. Allen. (Doc. #87, ¶¶ 60, 184, 242.)

While Plaintiff accurately states the length of the relationship, duration alone does not convert a normal arms-length business relationship into a fiduciary relationship. Additionally, there are no allegations that Defendants "managed" plaintiff's money. Rather, plaintiff simply paid the premiums for the insurance product. The mere payment of insurance premiums

14

does not create a fiduciary relationship. "A payment, series of payments, or a business relationship is not enough to create the trust and reliance necessary to form a fiduciary duty." Traditions Senior Mgmt., Inc. v. United Health Adm'rs, Inc., No. 8:12-cv-2321-T-30MAP, 2013 U.S. Dist. LEXIS 90627, at *7 (M.D. Fla. June 27, 2013) (holding that a client paying money to a company is insufficient, by itself, to establish a fiduciary duty, as it is "no different than an ordinary business transaction and does not give rise to a heightened expectation of trust without a special relationship with the parties."); see, e.g., Abdo v. Sallie Mae, Inc., No. 3:11-cv-111-J-32-JRK, 2014 U.S. Dist. LEXIS 91731, at *6 n. 3 (M.D. Fla. July 7, 2014) (noting that no fiduciary duty existed simply because Sallie Mae received student loan payments from plaintiff); Rabouin v. Metro. Life Ins. Co., 182 Misc. 2d 632, 635, 699 N.Y.S. 2d 655, 657 (Sup. Ct. 1999) (finding no fiduciary relationship where plaintiff failed to allege facts "which would suggest that any relationship evolved out of the ordinary arm's length relationship created by the payment of premiums to MetLife in return for a policy of insurance.").

The Court finds the Second Amended Complaint has not alleged facts that show Unum was "entrusted with the management of [his] money" beyond that of an ordinary business transaction. Accordingly, the Court finds Plaintiff's payment of insurance

15

premiums for a lengthy period of time does not tend to establish a fiduciary relationship.

### (3) Administrative Responsibilities

Plaintiff argues that Defendants' obligation to fairly administer claims for benefits created a fiduciary relationship. (Doc. #87, ¶ 245; Doc. #121, p. 6.) There is undoubtedly an obligation to administer insurance claims fairly. See generally Fla. Stat. § 624.155 (2020); Batas v. Prudential Ins. Co. of Am., 281 A.D. 2d 260, 274, 72 N.Y.S. 2d 3, 14 (App. Div. 1st Dept. 2001). While a claim of breach of fiduciary duty is possible, Plaintiff must allege facts which would plausibly establish the existence of a fiduciary relationship. See Gracey, 837 So. 2d at 353.

Here, Plaintiff has failed to provide sufficient facts in his Second Amended Complaint to show it is plausible, either under New York or Florida law, that a fiduciary relationship existed beyond that of a first-party contractual relationship. Despite Plaintiff's belief that Defendants did not fairly administer his insurance claim, the handling of a claim is a part of an ordinary arm's length commercial transaction, unless Plaintiff can show "some extraordinary circumstance, such as efforts by [the] insurer to gain the insured's trust or confidence." Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am., 51 F. Supp. 3d 379, 399 (S.D.N.Y. 2014); see Hogan v. Provident Life & Accident Ins. Co., 665 F.

16

Supp. 2d 1272, 1286-87 (M.D. Fla. 2009) (finding that no fiduciary duty existed between plaintiff and Unum, as an insurance holding company, even where its employees adjusted, reviewed, evaluated, handled, approved or denied insurance benefits, and implemented policies or procedures). The Second Amended Complaint provided no facts to show Defendants made an effort to gain Plaintiff's trust or confidence. Consequently, the Court finds that Defendants' administrative responsibilities does not tend to establish a fiduciary relationship.

### (4) Defendants' Expertise and Special Knowledge

Finally, Plaintiff states that during the administration of his claim, he relied upon Defendants' expertise and placed his trust and confidence in Defendants, which they accepted, when Unum directed Plaintiff to apply for Social Security Administration benefits using the assistance of GENEX, Unum's subsidiary. (Doc. #87, ¶¶ 72, 74; Doc. #121, p. 6.) The Court finds that Plaintiff's application and claims process for Social Security disability benefits did not provide "special circumstances" which would indicate something more than a mere arm's length association between an insurer and insured. Bldg. Educ. Corp., 982 So. 2d at 40-41; Saul, 153 A.D.3d at 949.

Both Florida and New York courts recognize that a fiduciary relationship may arise, even from a first-party insurance contract, when "one party's superior position or superior access

17

to confidential information is so great as virtually to require the other party to repose trust and confidence in the first party." Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am., 51 F. Supp. 3d 379, 398 (S.D.N.Y. 2014) (quoting Turner v. Temptu Inc., 11-CV-4411, 2013 U.S. Dist. LEXIS 114298, at *8 (S.D.N.Y. Aug. 13, 2013)); see Asokan v. Am. Gen. Life Ins. Co., 302 F. Supp. 3d 1303 (M.D. Fla. 2017) (recognizing that determination of whether a fiduciary relationship may exist depends on the extent of an insurance company's involvement in client's decision to purchase insurance, and whether the insurance company held itself out as having expertise in the field, and the insurer relied upon that expertise). Here, Plaintiff's Individual Policies contain no provisions related to Social Security Administration disability benefits. (Docs. ##87-1; 87-2; 87-3; 87-4.) On the other hand, his Group Policy provides that "Unum can provide expert advice regarding your claim and assist you with your [Social Security] application or appeal." (Doc. #87-5, p. 29.) In particular, the Group Policy states that when seeking Social Security disability benefits, Unum would help find appropriate legal representation, obtain medical and vocational evidence, and reimburse pre-approved case management expenses. (Id., pp. 29-30.)  If Social Security disability benefits are awarded, Plaintiff was required to allow Defendants to recoup benefits paid to Dr. Allen, thus reducing

18

Unum's liability on that claim. (Doc. #87, ¶ 73; Doc. #87-5, p. 20.)

These provisions are insufficient to support a fiduciary duty. At most, these options by the Unum Group relate only to social security benefits, which would inure to the Unum Group's benefit. They do not relate to the appropriateness of the "own occupation" Policies, or purport to offer special expertise as to such policies. It would require "a more direct or affirmative effort by [Unum] to gain [P]laintiff's trust and confidence, for example[,] the sales efforts by a salesman or the actions of a representative," which is not alleged here. Paraco Gas Corp., 51 F. Supp. 3d at 398 (citing Batas, 281 A.D. 2d at 264); see Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp., 850 So. 2d 536, 541 (Fla. Dist. Ct. App. 2003) ("[I]n the usual creditor-debtor relationship, a fiduciary duty does not arise and allegations of superior knowledge of a party's financial condition are generally insufficient to transform the creditor-debtor relationship into a fiduciary relationship.").

The Court concludes that the Second Amended Complaint does not provided sufficient facts to plausibly show the existence of a fiduciary relationship between Dr. Allen and any of the Defendants. Accordingly, Count III does not set forth a claim for breach of fiduciary duty under either New York or Florida law.

**ORDERED:**

Defendants' Motion for Judgment on the Pleadings as to Count III Breach of Fiduciary Duty (Doc. #114) is **GRANTED**. Judgment is entered in favor of Defendants and against Plaintiff as to Count III of the Second Amended Complaint.

**DONE AND ORDERED** at Fort Myers, Florida, this __22nd__ day of October 2020.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies: Counsel of record