UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARCUS ALLEN, M.D.,

        Plaintiff,

v.                        Case No.: 2:18-cv-00069-JES-MRM

FIRST UNUM LIFE INSURANCE
COMPANY, PROVIDENT LIFE AND
CASUALTY INSURANCE COMPANY
and THE UNUM GROUP,

        Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on review of plaintiff Marcus Allen, M.D.'s Motions in Limine (Docs. ##164, 165, 166, 167, 168, 169), filed on June 28, 2021. Defendants First Unum Life Insurance Company, Provident Life and Casualty Insurance Company and The Unum Group filed Responses in Opposition (Docs. ##188, 190, 191, 192, 194, 196) on July 22, 2021. Also before the Court are Defendants' Motions in Limine (Docs. ##172, 173, 174, 175) filed on June 28, 2021, to which Plaintiff Responded in Opposition (Docs. ##184, 185, 186, 187) on July 21, 2021.

The parties are well-acquainted with the facts of this case, as set forth in the Joint Final Pretrial Statement (Doc. #179) and the Court's recent Opinion and Order resolving cross-motions for summary judgment (Doc. #205.) For present purposes, the only claim

before the Court is Count 1 of the Second Amended Complaint (Doc. #87.)  Dr. Marcus Allen (plaintiff or Dr. Allen) asserts that defendants Provident Life and Casualty Insurance Company and The Unum Group (collectively Defendants) breached four individual disability insurance policies (the Individual Policies) when they terminated his disability benefits in August 2015.  As discussed in the February 17, 2022 Opinion and Order (Doc. #205, pp. 38-43) New York law governs substantive contract issues, supplemented by the Florida rule that requires the insurers to bear the burden of establishing that an insured was no longer disabled within the meaning of the Individual Policies.

## I.

A motion in limine is a "motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." Luce v. United States, 469 U.S. 38, 40 n.2 (1984).  These motions "are generally disfavored." Acevedo v. NCL (Bah.) Ltd., 317 F. Supp. 3d 1188, 1192 (S.D. Fla. 2017).  "Evidence is excluded upon a motion in limine only if the evidence is clearly inadmissible for any purpose." Id. "A motion in limine is not the proper vehicle to resolve substantive issues, to test issues of law, or to address or narrow the issues to be tried." McHale v. Crown Equip. Corp., No. 8:19-cv-707-VMC-SPF, 2021 WL 4527509, at *1, at *3 (M.D. Fla. Oct. 1, 2021) (citing LSQ Funding Grp. v. EDS Field Servs., 879 F. Supp. 2d 1320, 1337 (M.D.

Fla. 2012)). "Nor may a party use a motion in limine to sterilize the other party's presentation of the case." <u>Harris v. Wingo</u>, No. 2:18-CV-17-FTM-29MRM, 2021 WL 5028201, at *1 (M.D. Fla. Oct. 29, 2021) (cleaned up). Additionally, as the Supreme Court has cautioned:

> The ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.

<u>Luce</u>, 469 U.S. at 41-42. "A denial of a motion in limine is not a ruling which affirmatively admits any particular evidence," <u>Harris</u>, 2021 WL 5028201, at *1, and does not preserve an issue for appellate review. <u>United States v. Gari</u>, 572 F.3d 1352, 1356 n.2 (11th Cir. 2009).

**II.**

Count 1 of the Second Amended Complaint (Doc. #87, ¶¶ 198-218) sets forth a claim for breach of contract.  Dr. Allen alleges that defendants breached the four Individual Policies by (1) terminating the payment of benefits despite his continuing qualifying total disability, and (2) not acting in good faith and fair dealing in the performance of their obligations under the Individual Policies.

### (1)   Attorney Fees as Consequential Damages

The Second Amended Complaint alleges that Dr. Allen is entitled not only to "contract damages," but also consequential damages including, but not limited to, economic damages separate and distinct from actual contract damages.  (Doc. #87, ¶¶ 214-218.)  Both sides have filed motions in limine addressing whether evidence of attorney fees should be admissible as a component of the consequential damages sought by Dr. Allen.

Dr. Allen's motion in limine (Doc. #164) argues that attorney fees are a component of consequential damages which may be recovered under New York law in this type of breach of contract case. Dr. Allen primarily relies upon Bi-Economy Mkt., Inc. v Harleysville Ins. Co. of N.Y., 10 N.Y.3d 187 (2008) and Panasia Estates, Inc. v Hudson Ins. Co., 10 N.Y.3d 200 (2008). (Doc. #164, pp. 2-4.)  Dr. Allen envisions that his attorney fees evidence will be presented to the jury in his case-in-chief to determine entitlement to attorney fees, and then the amount of the attorney fees would be determined by the Court in a separate proceeding. (Doc. #164, pp. 4-5.)  Defendants' competing motion in limine (Doc. #172) urges the Court to prohibit Plaintiff from introducing any

evidence of entitlement to attorney's fees as a component of consequential damages.[1]

It appears undisputed that if Dr. Allen prevails on his breach of contract claim, New York law allows recovery of "general damages," i.e., damages which "are the natural and probable consequence of the breach" of a contract, which include "money that the breaching party agreed to pay under the contract." Biotronik A.G. v. Conor Medsystems Ireland, Ltd., 22 N.Y.3d 799, 805, 11 N.E.3d 676, 680 (2014)(citations omitted.) Additionally, "[i]mplicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 389, 663 N.E.2d 289, 291 (1995). This includes contracts of insurance. "As in all contracts, implicit in contracts of insurance is a covenant of good faith and fair dealing, such that "a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims." Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York, 10 N.Y.3d 187, 194, 886 N.E.2d 127 (2008). "[C]onsequential damages resulting from a breach of the covenant of good faith and fair dealing may be asserted in an insurance contract context," as long as the damages were "within the

---

[1] The Court rejects Dr. Allen's argument that Defendants' motion is effectively an untimely Rule 12(c) motion in disguise. (Doc. #185, pp. 2-3.)

contemplation of the parties as the probable result of a breach at the time of or prior to contracting." YMCA of Plattsburgh v. Phila. Indem. Ins. Co., No. 8:18-CV-0565 (LEK/DJS), 2018 U.S. Dist. LEXIS 202818, at *15 (N.D.N.Y. Nov. 30, 2018) (quoting Panasia Estates, Inc. v. Hudson Ins. Co., 10 N.Y.3d 200, 203, 886 N.E.2d 135 (2008)).[2]

The specific issue before the Court is whether such consequential damages may include attorney fees. Generally, New York law provides that a prevailing party in a breach of contract case may not collect attorneys' fees from the nonprevailing party unless such award is authorized by an agreement between the parties, statute, or court rule. Ambac Assurance Corp. v. Countrywide Home Loans, Inc., 31 N.Y.3d 569, 584, 106 N.E.3d 1176, 1185-86 (2018); TAG 380, LLC v. ComMet 380, Inc., 10 N.Y.3d 507, 515, 890 N.E.2d 195, 201 (2008). The Court is persuaded by the authority holding that attorney fees are not a part of consequential damages. "However, nothing in Bi-Economy or Panasia alters the common-law rule that, absent a contractual or policy provision permitting the recovery of an attorney's fee, an insured may not recover the expenses incurred in bringing an affirmative

---

[2] Defendants' argument that the breach of contract claim in this case does not involve an assertion of bad faith, (Doc. #191, p. 7); #172, p. 3 n.1) is factually incorrect. See Doc. #87, ¶¶ 206-207, 211, 212-218.

action against an insurer to settle its rights under the policy." Stein, LLC v. Lawyers Title Ins. Corp., 953 N.Y.S.2d 303, 304 (2012)(internal quotations and citation omitted). See also Santoro v. GEICO, 986 N.Y.S.2d 572, 574 (N.Y. App. Div. 2014) (noting that under Panasia, consequential damages were recoverable, but "the only consequential damages asserted by the plaintiff are attorney's fee and costs and disbursements resulting from this affirmative litigation, which are not recoverable[.]"); Goodfellow v. Allstate Indem. Co., No. 14-CV-642S, 2014 U.S. Dist. LEXIS 177835, 2014 WL 7384239, at *4 (W.D.N.Y. Dec. 29, 2014) (finding plaintiff could not recover attorney's fees, costs, and litigation expenses as a form of consequential damages).

Even if attorney fees could be a component of consequential damages, Plaintiff has not pointed to, nor has the Court found, any specific provision within the Individual Policies (Docs. ##87-1; 87-2; 87-3; 87-4) suggesting that at the time the Individual Policies were executed, the parties' contemplated attorney fees as a component of consequential damages. Therefore, applying New York law, Plaintiff may not recover attorney fees as a component of consequential damages. Dr. Allen's motion in limine (Doc. #164) is denied. Defendants' motion in limine (Doc. #172) is granted to the extent Dr. Allen may not attempt to introduce evidence at trial whose sole purpose is to establish entitlement to attorney fees as

a component of consequential damages without the prior approval of the Court.

### (2)   Testimony of Physicians

Both sides have filed motions in limine seeking to preclude or limit testimony by certain physicians.  (Docs. ## 165, 174.) Both sides agree that none of these physicians have been listed as expert witnesses.  <u>See</u> Joint Final Pretrial Statement, Doc. #179, p. 13.

Dr. Allen's motion in limine (Doc. #165) seeks to preclude or limit the testimony of Drs. Matthew Kay, David DiLoreto, Judith Cohen, and Richard Eisenberg, alleging violations of Federal Rule of Civil Procedure 26. (<u>Id.</u> at 1, 3-6.) Drs. Kay and DiLoreto conducted Independent Medical Examinations (IMEs) of Dr. Allen in December 2014 and August 2015, respectively. (Doc. #1; Doc. #188, p. 2.)  Dr. Cohen and Dr. Eisenberg never examined Plaintiff, but reviewed medical records or communicated with Plaintiff's physicians.  Dr. Allen asserts that all four witnesses are really being called as expert witnesses, but Defendants have failed to identify them as such, as required by Federal Rule of Civil Procedure 26(a), or file expert reports, as required by Rule 26(a)(2)(B) or (a)(2)(C). Dr. Allen argues that all their testimony should be precluded as confusing to the jury and unfairly prejudicial. (<u>Id.</u>, pp. 13-14.) Alternatively, Dr. Allen argues that any testimony should be limited to what the IME physicians

observed upon their examinations of Dr. Allen or what a lay witness who reviewed documents observed. (Id., pp. 18-20.)

In a similar vein, Defendants seeks to prevent or limit Dr. Allen from introducing expert testimony from Dr. Stephen Schwartz, a physician who saw Dr. Allen between one and three times (depending upon who is setting forth the facts.) (Doc. #174, p. 1.) Dr. Allen identified Dr. Schwartz as a potential witness with "knowledge regarding Plaintiff's medical conditions/disability," but he did not identify Dr. Schwartz as an expert witness or provide an expert report. (Id., pp. 2-3.) Defendants request that Dr. Schwartz's testimony be excluded or limited to that of a lay witness based only upon his personal knowledge resulting from providing medical care to Plaintiff. (Id., pp. 5-6.)

While Rule 26(a)(2) governs disclosures by expert witnesses, it does not relate to witnesses offering lay opinions under Rule 701. "[A] party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). Therefore, neither side has violated their discovery obligations under Rule 26(a).

None of the five physician-witnesses are allowed to testify as an expert witness. This does not, however, eliminate all opinion testimony. "Under Federal Rule of Evidence 701, a lay witness may offer opinion testimony if the testimony is '(a)

rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" United States v. Estrada, 969 F.3d 1245, 1270–71 (11th Cir. 2020) (quoting Fed. R. Evid. 701).

> "Notably, Rule 701 does not prohibit lay witnesses from testifying based on particularized knowledge gained from their own personal experiences." United States v. Jeri, 869 F.3d 1247, 1265 (11th Cir. 2017) (internal quotation marks omitted).

Omni Health Sols., LLC v. Zurich Am. Ins. Co., 19-12406, 2021 WL 2025146 (11th Cir. May 21, 2021).

The Eleventh Circuit has quoted with approval the statement that "[a] treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party," and that a physician may offer lay *opinion* testimony, consistent with Rule 701, when the opinion is "based on his experience as a physician and [is] clearly helpful to an understanding of his decision making process in the situation." Williams v. Mast Biosurgery USA, Inc., 644 F.3d 1312, 1317–18 (11th Cir. 2011)(citations omitted). Testimony based on a hypothesis "crosses the line from lay to expert testimony, and it must comply with the requirements of Rule 702 and the strictures of *Daubert." Id.* Thus, a physician may

testify as a lay witness regarding his observations and decisions during treatment or observation of a patient, but may not express an *opinion* unrelated to treatment which is "based on scientific, technical, or other specialized knowledge." Wilson v. Taser Intern., Inc., 303 Fed. Appx. 708, 712 (11th Cir. 2008).

The record is clear that none of the witnesses are being offered as expert witnesses, and their testimony will be limited to that allowed by a lay witness under Rule 701. Accordingly, the Court grants both motions in limine (Docs. ## 165, 174) to the extent each seeks to preclude expert opinion testimony from any of the five physicians. Nevertheless, the exact boundaries of proper lay witness testimony will have to be addressed at trial by way of specific objections to specific testimony. See Torres v. First Transit, Inc., No. 17-cv-81162-BLOOM/Reinhart, 2018 U.S. Dist. LEXIS 131565, at *9 (S.D. Fla. Aug. 6, 2018) (noting that "[t]he exact boundaries of [a] . . . physician's testimony may need to be addressed with specific objections to specific testimony in the context of trial").

**(3)   Objective Evidence Requirement**

Dr. Allen seeks to exclude evidence or argument that there is a requirement for objective evidence to prove total disability under the Individual Policies. (Doc. #166, p. 1.) Dr. Allen maintains that the Individual Policies do not contain such a

requirement, so that evidence of a lack of objective evidence is irrelevant and inadmissible.

The Individual Policies require Dr. Allen to submit proof of loss showing that he meets the definition of Total Disability in the Individual Policies.  The definition of Total Disability is identical for Individual Policies ## 87-1, 87-2, 87-3, but different for Individual Policy #87-4.  All four Individual Policies define Total Disability to mean that "due to Injuries or Sickness" Dr. Allen is "not able to perform the substantial and material duties of your occupation."  Individual Policies #87-1 through #87-3 also require that Dr. Allen is "under the care and attendance of a Physician."  Individual Policy #87-4 requires that Dr. Allen is "receiving care by a Physician which is appropriate for the conditions causing the disability."

Defendants' termination of benefits under the Individual Policies did refer to the absence of objective evidence.  (Doc. #166, p. 3.)  It does not appear, however, that Defendants maintain that any of the Individual Policies require objective evidence of a disability (Doc. #192, p. 4), and it appears undisputed that there are no objective tests to demonstrate how a patient perceives floaters. (Id., pp. 4-10.)

The failure to require objective evidence does not mean that the lack of objective evidence is not relevant and admissible. Defendants may clearly take the nature of the evidence into

consideration in determining whether to terminate benefits, just as it could be considered in determining whether to award benefits. Badawy v. First Reliance Standard Life Ins. Co., 581 F. Supp. 2d 594, 603 (S.D.N.Y. 2008) ("It is not unreasonable for an insurer to credit objective evidence over subjective evidence."). Such evidence is also relevant for a jury's determination of total disability. "The issue of total disability is a question of fact for the jury to determine," and the jury may weigh the totality of the evidence, which includes Plaintiff's credible subjective complaints against the presence or absence of objective medical findings. Plaintiff's motion in limine (Doc. #166) is denied.

**(4)   Evidence Regarding Refusal of Surgery**

Dr. Allen seeks to preclude evidence that he refused surgical intervention for his eye condition. (Doc. #167, p. 1.) Plaintiff argues that the unambiguous language of the Individual Polices do not mandate corrective surgery, and New York laws does not require it. (Id., pp. 4-5.) Defendants respond that the issue is whether surgical intervention for Plaintiff's allegedly disabling floaters is "appropriate care" under Individual Policy #87-4 language, which is a disputed fact that can only be resolved by a jury. (Doc. #190, p. 7.)

The parties do not dispute that Dr. Allen's Individual Policies #87-1 through #87-3 require that Dr. Allen be "under the care and attendance of a Physician", while Individual Policy #87-

4 requires that Dr. Allen is "receiving care by a Physician which is appropriate for the condition causing disability." Courts have interpreted this latter policy provision as broadly and unambiguously creating an "explicit duty to seek and accept appropriate care." Provident Life and Accident Ins. Co. v. Henry, 106 F. Supp. 2d 1002 (C.D. Cal. 2000); see, e.g., Reznick v. Provident Life & Accident Ins. Co., 364 F. Supp. 2d 635, 637-38 (E.D. Mich. 2005) (interpreting policy language requiring insured to be "receiving care by a Physician which is appropriate for the conditions causing the disability" as unambiguously imposing on claimant "duty to seek and accept appropriate care"); Buck v. Unum Life Ins. Co., No. C-08-5166 MMC, 2010 U.S. Dist. LEXIS 22479, at *18 (N.D. Cal. 2010) (same). The issues become what is "appropriate care" for Plaintiff's disabling condition, and whether this includes surgical intervention.

There is conflicting medical evidence between Plaintiff's treating ophthalmologist Dr. Andrews, who recommended Plaintiff not undergo the vitrectomy (Doc. #148-4, p. 203), and consulting ophthalmologist Dr. DiLoreto, who "strongly disagreed" with Dr. Andrews' opinion because the risks associated with the surgery were "very low" and the surgery could cure Dr. Allen's eye condition. (Id., p. 206.) Because a trier of fact may credit one physician's opinion over another, whether Plaintiff was obligated to have the surgery is a question to be resolved by a jury in its

determination of appropriate care. See Buck, 2010 U.S. Dist. LEXIS 22479, at *20 (finding there was a triable issue of fact where there was conflicting medical evidence about whether surgery was proper after Unum denied benefits).

Dr. Allen relies upon Poole v. R.R. Ret. Bd., 905 F.2d 654, 664 (2d Cir. 1990) and Azeez v. Unum Life Insurance Company of America, No. 05CV4611ERKJMA, 2007 WL 9718990, (E.D.N.Y. Jan. 16, 2007), to assert that New York law does not require a disabled insured to undergo surgery, and thus Defendants should not be able to present evidence that Plaintiff declined surgery. (Doc. #167, pp. 6-7.) These cases are not applicable to the matter at hand since neither Poole nor Azeez considered similar policy language.

Dr. Allen implies that the evidence should be excluded because Defendants had previously found Plaintiff's failure to undergo surgery to be "appropriate." This is based on the claims file notes stating "[a]dditional surgery may improve EE's [Dr. Allen's] condition further; however, has not been recommended by his physicians, which is appropriate." (Doc. #167, pp. 7-8.)  While this may be considered by the jury, it is certainly not a basis to exclude evidence. See Burkhart v. R.J. Reynolds Tobacco Co., 2014 U.S. Dist. LEXIS 200593, 2014 WL 12617550, *4 (M.D. Fla. Apr. 30, 2014 ("[A] motion in limine should not be used to resolve factual disputes or weigh evidence.").

Finally, Plaintiff's motion asserts that if Defendants truly believed that a vitrectomy surgery was the "appropriate care" required by his Individual Policy, then Defendants were required to notify Plaintiff of his failure to comply with this condition and provide an opportunity to receive the appropriate care, which they failed to do. (Doc. #167, pp. 12-13.)  But such a claim goes far beyond the proper scope of a motion in limine. See Whidden v. Roberts, 334 F.R.D. 321, 324-25 (N.D. Fla. 2020) ("A motion in limine is not a permissible substitute for a motion for summary judgment.").  Plaintiff's motion in limine (Doc. #167) is therefore denied.

**(5)  Evidence Related To A Different Occupational Standard**

Dr. Allen seeks to preclude admission of evidence related to an occupational standard different than the one Defendants applied during the administration of his claims. (Doc. #168, p. 1.) Specifically, Dr. Allen asserts that the parties had agreed Dr. Allen needed "detailed visual acuity with no obstructions" to be able to perform the material and substantial duties of his occupation. (Id., p. 8; Doc. #148-2, pp. 55-59.)  Dr. Allen argues that Defendants should be precluded from offering any contrary disability standard because it would be confusing, irrelevant, and make Plaintiff assume a burden of proof that is not called for. (Doc. #168, p. 9.)

Total disability is defined by the Individual Policies to include the requirement that Dr. Allen is not able to perform "the substantial and material duties of his occupation."  The parties dispute the proper disability standard which should be utilized to determine whether Plaintiff can perform these duties of his occupation.  Dr. Allen asserts that to perform the substantial and material duties of his occupation requires "detailed visual acuity with no obstructions," while Defendants argue that a radiologist like Plaintiff only needs "normal vision."  (Doc. #194, pp. 3-4.) This is clearly a question of fact for the jury to consider. See McGrail v. Equitable Life Assur. Soc. of U.S., 292 N.Y. 419, 55 N.E.2d 483 (1944); Sun Life Ins. Co. v. Evans, 340 So. 2d 957, 959 (Fla. 3d DCA 1976)("The phrase total disability is a relative term, depending upon the character of the occupation, the capabilities of the insured and the circumstances of the particular case, so that ordinarily, any question involving application of the term total disability, is a question of fact for the jury."). Accordingly, Plaintiff's motion (Doc. #168) is denied.

**(6)  Dr. Allen's Plan to Resign from Prospect Hill Radiology**

Dr. Allen seeks to exclude any evidence regarding his former plan to resign as a partner at Prospect Hill Radiology Group, P.C. (Prospect Hill) in April 2010 and relocate to Florida. (Doc. #169, pp. 1-2.)  Dr. Allen asserts Defendants considered his disability claims fully aware of his pre-disability plans to resign as a

partner of Prospect Hill and return to work as an employee, which never came to pass due to his total disability. (Id., p. 7.) Dr. Allen asserts that despite Defendants' suggestion that he is malingering and not actually disabled, Defendants never made reference to pre-disability plans or relocation as a basis for the termination of benefits, thus any such evidence is irrelevant. (Id., pp. 2, 7-9.) Dr. Allen further asserts that even if he had resigned and eventually returned to Prospect Hill to work as an employee, he still would have been entitled to benefits since he was "regularly engaged" in his radiological occupation. (Id., pp. 9-13.) In sum, Dr. Allen contends that any evidence of his anticipated resignation or relocation should be precluded under Rule 403 of the Federal Rules of Evidence because it is irrelevant and unduly prejudicial. (Id., pp. 2-3, 13.)

Defendants, on the other hand, assert that it was not until discovery took place that they received evidence that revealed Plaintiff's intent to "retire" from his occupation prior to experiencing the first eye-related symptom[3] (Doc. #196, p. 4), which was completely different from Plaintiff's initial explanation that he resigned from his position with Prospect Hill

---

[3] In their Response, Defendants provide an April 20, 2010 email from Dr. Allen entitled "retirement" that discusses whether he should provide a formal letter of resignation at the next partnership meeting. (Doc. #196, p. 4.)

on June 23, 2010 due to his eye-related symptoms that appeared on May 1, 2010. (<u>Id.</u>, p. 5.)  Defendants argue that these facts would allow a jury to reasonably infer that Plaintiff ceased work for non-health related reasons, i.e., retirement, and that his subjectively functional limitations lack credibility. (<u>Id.</u>, pp. 2-4.)

The Court denies Dr. Allen's motion on two bases. First, there remains a factual dispute over whether Plaintiff resigned due to his eye condition preventing him from performing his work duties, or for non-health related purposes prior to any manifestation of his condition.  This dispute may not properly be resolved in a motion in limine. <u>See Burkhart</u>, 2014 WL 12617550, *4 ("[A] motion in limine should not be used to resolve factual disputes or weigh evidence.").  Second, these factual issues ultimately bear on Plaintiff's credibility, which is a relevant matter for the jury. Whether Dr. Allen's stated reasons for leaving his job as a diagnostic radiologist were pretextual is relevant to the weight the jury may give to Plaintiff's explanations of the ongoing severity of his disability.  The Court finds the probative value of the evidence outweighs the risk of prejudice, and the evidence is admissible. <u>See</u> <u>United States v. Norton</u>, 867 F.2d 1354, 1361 (11th Cir. 1989) ("Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence. The balance under the Rule,

therefore, should be struck in favor of admissibility." (marks and citations omitted)).  The motion is denied.

**(7)  The "Scheme" and Claim Handling Issues**

Defendants seek to preclude evidence of their alleged "scheme" and claim handling issues. (Doc. #173, p. 1.)  Defendants maintain that such evidence is only related to Plaintiff's RICO, fraud and breach of fiduciary duty claims, all of which have already been dismissed by this Court. (Id.)  Defendants assert that the only remaining breach of contract claim involves issues of whether Plaintiff was totally disabled when his benefits were terminated and whether Plaintiff satisfied the conditions precedent to coverage under the Individual Policies. (Id., pp. 2-3.)  Defendants therefore request an order excluding from trial any contentions, arguments or evidence that Defendants and its employees and/or agents:

> (a) engaged in bad faith, oppression, fraud, malice, and/or the operation of a continuing and ongoing scheme to defraud Plaintiff and/or other policy-holders; (b) acted improperly in the handling of Plaintiff's claim and/or failed to conduct a reasonable investigation thereof; (c) failed to timely (or otherwise) respond to either Plaintiff or his attorney; (d) failed to timely (or otherwise) review Plaintiff's medical records; (e) had no intention of honoring the explicit terms of the Policy; (f) induced Plaintiff to purchase the Policy and collected premium payments for an extended period of time; (g) failed to follow Defendants' procedures when faced with Plaintiff's claim and others like his; (h) worked to defraud Plaintiff through the denial of a legitimate claim; and (i) engaged in unfair claims practices.

(Doc. #173, pp. 3-4.)

Dr. Allen argues that evidence related to the dismissed claims is relevant to and imperative to establishing the remaining claim. (Doc. #186, pp. 5-7.) For instance, evidence that Defendants improperly handled Plaintiff's claim by "failing to review Plaintiff's medical records . . . or to follow their own written claims procedures . . ." would be relevant to Plaintiff's breach of contract claim. (Id.)

No party may present evidence or argument that there were other claims which have been dismissed by the Court. While reference to such claims is excluded, evidence which may have supported such claims may also support the current claim. Bi-Economy Mkt., Inc., 10 N.Y.3d at 194 (2008) ("As in all contracts, implicit in contracts of insurance is a covenant of good faith and fair dealing, such that "a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims.").

Evidence of alleged misconduct in connection with the processing of Dr. Allen's disability claims is relevant to the good faith component of Count 1. Therefore, the motion in limine as to evidence of the handling of Dr. Allen's claim (as opposed to references to the dismissed claims or mishandling of other claims) is denied.

**(8)   Social Security Administration Decision**

Defendants instructed Dr. Allen to apply for Social Security disability benefits, as was their right under the Individual Policies.   The resulting Social Security Administration (SSA) Decision concluded, among other things, that Plaintiff was disabled from performing his duties as a radiologist, but was not disabled from performing other work which existed in the national economy.   Social security disability benefits were therefore denied.

Defendants seek to exclude evidence which in any manner refers to the SSA's decision on Plaintiff's entitlement to disability benefits. (Doc. #175, p. 1.) Defendants argue that the SSA decision is not admissible because (1) such evidence is irrelevant under Federal Rule of Evidence 401, or its probative value is substantially outweighed by its prejudicial effect, its tendency to cause confusion of the issues, and its tendency to mislead the jury under Rule 403; and (2) Plaintiff has not listed the SSA, or authors of any SSA determination on his witness list, thus the report is inadmissible hearsay pursuant to Rule 802. (Id., pp. 1-2.) Defendants emphasize that this case involves Plaintiff's claim for total disability benefits under the Individual Policies, not under the SSA disability standard. (Id., p. 2.)

Dr. Allen, on the other hand, argues that the SSA decision is relevant to this case as it demonstrates that he was found to be

unable to perform his job as a diagnostic radiologist and Defendants considered the SSA's findings in making its total disability determination.  (Doc. #186, pp. 7-9.) Dr. Allen also points out that Unum's internal policy requires that the SSA's determination of disability be given "significant weight," which indicates that "the SSA's judgment that a claimant is disabled will weigh heavily in the claimant's favor as [Unum} makes [its] own disability determination under the applicable company policy." (Doc. #148-2, pp. 177-178, 342; Doc. #186, pp. 11-12.)

The Court finds that the SSA disability decision as to Dr. Allen's position as a radiologist is relevant, although not dispositive. Sparks v. Unum Life Ins. Co., 225 F.3d 659 (6th Cir. 2000)(denying defendant's motion in limine based upon a finding that the SSA's determination of disability was relevant to a determination of total disability under an insurance policy, but "it [was] not dispositive given the substantial differences between the SSA's and the [insurer's] plan's working definitions of disability."). "[T]he SSA's determination has some relevance because it addressed [P]laintiff's condition during the period relevant to this case." Parker v. Reliance Standard Life Ins. Co., 99 Civ. 1822 (RMB)(THK), 2000 U.S. Dist. LEXIS 784, at *13 (S.D.N.Y. Jan. 27, 2000).

The Court also finds that the probative value of the SSA decision is not substantially outweighed by any unfair prejudicial

effect, confusion of the issues, or a tendency to mislead the jury. See McElgunn, 2009 U.S. Dist. LEXIS 46498, at *28 (finding the same). Defendants directed that Dr. Allen apply for Social Security benefits, and have been aware of the SSA's disability determination since July 2013 (Doc. #105, ¶ 82). Defendants had ample time to consider the SSA's decision. Defendants stated in a September 6, 2016 letter that they received the SSA's determination and agreed (at that time) with the SSA that Dr. Allen was unable to perform his occupational duties as a diagnostic radiologist, and took into consideration these findings when they acknowledged Plaintiff's total disability from June 2010 through August 2015, and when they terminated benefits. (Doc. #186-1, pp. 1-2.) Additionally, "the fact that the social security standard for disability determination may be different from that required by the insurance policy may be explained to the jury to avoid any confusion." McElgunn, 2009 U.S. Dist. LEXIS 46498, at *28.

The Court need not decide the admissibility of all or part of the SSA decision prior to trial. Plaintiff bears the burden of proof at trial, which may well depend on the record at the time. See, e.g., under Rule 802(d)(2)(B) the SSA's decision may not be hearsay if Defendants adopted the decision and believed it to be true. (Doc. #186, p. 14.); United States v. Rivera, 780 F.3d 1084, 1092 (11th Cir. 2015)(holding that "[o]ut-of-court declarations . . . offered only to show their effect on the listener" did not

constitute hearsay)).  Accordingly, Defendants' motion in limine to exclude evidence at trial which in any manner refers to the Social Security Administration's decision on Plaintiff's entitlement to disability benefits is hereby denied.

Accordingly, it is now

**ORDERED:**

1. Plaintiff's Motion in Limine and/or Argument Regarding Plaintiff's Claim for Consequential Damages (Doc. #164) is **DENIED.**

2. Plaintiff's Motion in Limine to Preclude or Limit Expert Testimony of Physicians Employed or Retained by Defendants (Doc. #165) is **GRANTED** to the extent Drs. Kay, DiLoreto, Cohen and Eisenberg may not testify as expert witnesses pursuant to Fed. R. Evid. 702, but may testify as a lay witness pursuant to Fed. R. Evid. 701.

3. Plaintiff's Motion in Limine to Preclude Introduction of Alleged Objective Evidence Requirement (Doc. #166) is **DENIED.**

4. Plaintiff's Motion in Limine on Appropriate Care to Exclude Evidence Regarding Surgery (Doc. #167) is **DENIED.**

5. Plaintiff's Motion in Limine to Preclude Admission of Evidence Related to a Different Occupational Standard at Trial (Doc. #168) is **DENIED.**

6. Plaintiff's Motion in Limine to Exclude Any Evidence Regarding His Alleged Plan to Resign From His Partnership (Doc. #169) is **DENIED**.

7. Defendants' Motion in Limine Regarding Attorney Fees and Consequential Damages (Doc. #172) is **GRANTED** to the extent Dr. Allen may not introduce at trial whose sole purpose is to establish entitlement to attorney fees as a component of consequential damages without prior approval of the Court. The Motion is otherwise **DENIED**.

8. Defendants' Motion in Limine to Preclude Plaintiff from Introducing Evidence of Defendants' Alleged Scheme and Claim Handling Issues (Doc. #173) is **DENIED** as to the handling of Dr. Allen's claim (as opposed to references to the dismissed claims or mishandling of other claims).

9. Defendants' Motion in Limine Regarding Testimony From Dr. Schwartz (Doc. #174) is **GRANTED** to the extent Dr. Schwartz may not testify as expert witnesses pursuant to Fed. R. Evid. 702, but may testify as a lay witness pursuant to Fed. R. Evid. 701.

10. Defendants' Motion in Limine to Exclude Evidence Related to the Social Security Administration's June 28, 2013 Decision (Doc. #175) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this ___22nd___ day of February, 2022.




JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies:
Counsel of record