UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARCUS ALLEN, M.D.,

      Plaintiff,

v.                           Case No:  2:18-cv-69-JES-KCD

FIRST UNUM LIFE INSURANCE
COMPANY, PROVIDENT LIFE AND
CASUALTY INSURANCE COMPANY
AND THE UNUM GROUP,

      Defendants.

---

## OPINION AND ORDER

    This case comes before the Court on defendants First Unum Life Insurance Company and Unum Group's Motion for Summary Judgment with Supporting Memorandum of Law (Doc. #271). Plaintiff filed a Response in Opposition (Doc. #274), to which defendants filed a Reply. (Doc. #275.)  The Court heard oral arguments on December 7, 2022.  For the reasons set forth, the motion is **GRANTED**.

### I.

    Dr. Marcus Allen (Plaintiff or Dr. Allen) filed a Second Amended Complaint (Doc. #87) claiming that defendants First Unum Life Insurance Company (First Unum), Provident Life and Casualty Insurance Company (Provident), and Unum Group (Unum Group) (collectively Defendants) improperly terminated the disability benefits he was receiving pursuant to four individual "own-

occupation" disability insurance policies (the Individual Policies) and one hybrid "own-occupation"/"any gainful occupation" group disability insurance policy (the Amended Group Policy). Defendants' response included that Dr. Allen was no longer entitled to these disability benefits because he was no longer totally disabled within the meaning of any policy.

The Court determined that Dr. Allen's state law breach of contract claim based on his Individual Polices (Count I) was not preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (ERISA). (Doc. #205, p. 24.) The Court also determined, however, that ERISA did preempt Dr. Allen's state law claim under the Amended Group Policy (Count II). (Id., p. 37.) The Court severed Dr. Allen's claims and granted leave for Dr. Allen to amend his Second Amended Complaint to assert claims pursuant to ERISA. (Id., pp. 45, 47.)

In March 2022, a jury trial was held regarding Dr. Allen's claim for breach of the four Individual Policies (the IP Litigation). The jury determined that defendants Provident and Unum Group had proven by a preponderance of the evidence that Dr. Allen was no longer totally disabled within the meaning of any of the four Individual Policies as of August 22, 2015. (Doc. #243, pp. 1-2.) Accordingly, there was no breach of the Individual Policies by either defendant.

On May 2, 2022, Dr. Allen filed a Fourth Amended Complaint (FAC) setting forth his claims under the Amended Group Policy against defendants First Unum and Unum Group (the ERISA Litigation). (Doc. #250.) Count I of the FAC asserts a claim for ERISA plan disability benefits (plus interest) pursuant to 29 U.S.C. § 1132(a)(1)(B), alleging that Dr. Allen's Amended Group Policy disability benefits had been improperly terminated. (<u>Id.</u>, ¶ 212.)  Count II sets forth a claim for attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1). (<u>Id.</u>, ¶¶ 213-215.) Defendants filed their Answer on June 3, 2022 (Doc. #270), and now move for summary judgment as to each of the two ERISA claims asserted in the FAC.

## II.

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" <u>In re NRP Lease Holdings, LLC</u>, 50 F.4th 979, 982 (11th Cir. 2022)(quoting Fed. R. Civ. P. 56(a)). "The court must draw all reasonable inferences in favor of the non-moving party." <u>Robinson v. Sauls</u>, 46 F.4th 1332, 1340 (11th Cir. 2022).

## III.

While the Summary Judgment Motion is a bit vague, Defendants' Reply makes clear that the Motion is based on issue preclusion (collateral estoppel) principles. (Doc. #275, p. 2.)  Defendants

argue that the ERISA claims are precluded by the jury verdicts in the IP Litigation, i.e., that the jury's factual determination that as of August 22, 2015, Dr. Allen was no longer totally disabled within the meaning of the Individual Policies precludes Dr. Allen from asserting ERISA disability benefits claims under the Amended Group Policy. (Doc. #271.)  Defendants argue the jury determined that at the time benefits were terminated Dr. Allen was capable of performing the duties of his own occupation, a factual finding which is binding on this Court and precludes any contrary judicial determination under the Amended Group Policy.  (Id., pp. 4-8.)

### A. General Issue Preclusion Principles

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"  Taylor v. Sturgell, 553 U.S. 880, 892 (2008).  "By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,' these two doctrines protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'"  Id. (quoting Montana v. United States, 440 U.S. 147, 153-154 (1979)).

Issue preclusion, otherwise referred to as collateral estoppel, "means simply that when an issue of ultimate fact has

once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." United States v. Lewis, 40 F.4th 1229, 1237 (11th Cir. 2022) (quoting Ashe v. Swenson, 397 U.S. 436, 443 (1970)). Issue preclusion "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment.'" Kordash v. United States, 51 F.4th 1289, 1294 (11th Cir. 2022) (quoting Taylor, 553 U.S. at 892).

Issue preclusion requires that the parties be identical or in privity with each other. "In order for issue preclusion to apply, both cases must involve the same parties or their privies." In re Hazan, 10 F.4th 1244, 1251 n.5 (11th Cir. 2021). In such a situation, issue preclusion is applied when four additional conditions are established:

> (1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior suit; (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

<u>Kordash</u>, 51 F.4th at 1294 (quoting <u>Miller's Ale House, Inc. v.</u> <u>Boynton Carolina Ale House, LLC</u>, 702 F.3d 1312, 1318 (11th Cir. 2012)).[1]

## B. Application of Issue Preclusion Principles

### (1)   Identical Parties or Privies

The threshold requirement[2] for issue preclusion is that the two cases involved the same parties or their privies.  <u>Lewis</u>, 40 F.4th at 1238.  "A person who was not a named party to [a prior] action will nonetheless be subject to collateral estoppel arising from that action if that person was in privity with a party" in that action.  <u>Cook v. State</u>, 921 So. 2d 631, 635 (Fla. 2d DCA 2005). In general terms, "privity" is a relationship between two parties who both have a legally recognized, mutual interest in the same subject matter.  <u>Lewis</u>, 40 F.4th at 1238.  Privity is a "flexible legal term" that applies "when a person, although not a party, has

---

[1] Dr. Allen argues that the law as developed by the Second Circuit Court of Appeals governs this case because the Amended Group Policy provides that New York substantive law and ERISA are controlling.  The issue preclusion principles developed by the Second Circuit are not materially different than those articulated by the Eleventh Circuit.  See <u>Cayuga Nation v. Tanner</u>, 684 F.4th 361, 374 (2d Cir. 2021).

[2] "If identity or privity of parties cannot be established, then there is no need to examine the other factors in determining whether res judicata or collateral estoppel applies." <u>E.E.O.C. v.</u> <u>Pemco Aeroplex, Inc.</u>, 383 F.3d 1280, 1285 (11th Cir. 2004).

his interests adequately represented by someone with the same interests who is a party." Pemco Aeroplex, Inc., 383 F.3d at 1286.

Dr. Allen argues that the privity requirement is not satisfied (Doc. #274, pp. 9-10), but the Court finds otherwise.  The IP Litigation involved defendants Provident and Unum Group (Docs. ##235, 236, 243), whereas the ERISA Litigation involves defendants First Unum and Unum Group.  (Doc. #250, p. 1.)  Thus, Unum Group is a party in each litigation, while First Unum was not a named party in the IP Litigation.

Privity nevertheless has been established as to First Unum. Dr. Allen stated in the Second Amended Complaint that First Unum, Provident and Unum Group "currently operate under the alter-ego 'Unum' . . .." (Doc. #87, ¶ 10.) Additionally, the Second Amended Complaint alleges that "Unum Group operated as a holding and parent company of First Unum, Paul Revere and Provident, and is responsible for all claims handling for its subsidiaries including First Unum, . . . and Provident." (Id., ¶ 14.)  In their Answer to the Second Amended Complaint, Defendants admitted that "Unum Group is a holding company for all of its subsidiary companies, including, but not limited to, Provident Life and First Unum." (Doc. #105, ¶ 14.)  These are sufficient to establish the privity required for issue preclusion purposes.

**(2)  Lack of Judgment**

As stated above, issue preclusion ordinarily refers to "an issue of ultimate fact that has once been determined by a valid and final judgment." Lewis, 40 F.4th at 1237.  Another threshold-type issue is the admitted lack of a judgment, final or otherwise, in this case. Dr. Allen asserts that a jury verdict is insufficient, and the lack of a judgment is fatal to Defendants' issue preclusion argument.  (Doc. #274, pp. 3, 5.)

"Claim preclusion applies only when there is a final judgment, but issue preclusion requires only that the adjudication of an issue 'be sufficiently firm to be accorded conclusive effect.'" Powrzanas v. Jones Util. & Contracting Co., 822 F. App'x 926, 928-29 (11th Cir. 2020) (quoting Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1359 (11th Cir. 1998))[3]. Thus, "[t]he finality requirement is less stringent for issue preclusion than for claim preclusion." Id. (quoting Christo v. Padgett, 223 F.3d 1324, 1339 (11th Cir. 2000)). "When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is

---

[3] The Second Circuit follows the same principle.  U. S. ex rel. DiGiangiemo v. Regan, 528 F.2d 1262, 1265 (2d Cir. 1975) ("For purposes of issue preclusion, 'final judgment' includes any prior adjudication of an issue in another action between the parties that is determined to be sufficiently firm to be accorded conclusive effect." (punctuation and citations omitted.))

determined, the issue is actually litigated" for purposes of issue preclusion. Id. (quoting Pleming, 142 F.3d at 1359). Dr. Allen's argument that the lack of a judgment is necessarily fatal to the motion is therefore incorrect.

### (3)  Identical Issues At Stake

The Court must, however, determine the specific issue that was determined in the IP Litigation, i.e., the issue that was raised, submitted and determined by the jury, and then compare that issue to the issue to be determined in the ERISA Litigation. "[I]ssue preclusion applies only when 'the issue at stake is identical to the one involved in the prior litigation.'" Miller's Ale House, 702 F.3d at 1318 (citation omitted.)  The two cases must involve identical events or transactions, not simply ones similar in nature and close in time. In re McWhorter, 887 F.2d 1564, 1567-68 (11th Cir. 1989). A party need identify only one materially different fact altering the legal issue in the case. CSX Transp., Inc. v. Bhd. of Maint. of Way Employees, 327 F.3d 1309, 1317-18 (11th Cir. 2003).

### (a)  IP Litigation Issue

The four Individual Polices were all "own occupation" disability policies, meaning that Dr. Allen was totally disabled if he was unable to perform the substantial and material duties of his occupation as a diagnostic radiologist, even if he was able to perform substantial and material duties of other gainful

occupations.   Dr. Allen's claim under the Individual Policies asserted that because of vision problems he was unable to practice medicine as a diagnostic radiologist as of May 1, 2010.  Defendants initially determined that Dr. Allen was totally disabled and began paying monthly benefits beginning November 2010 pursuant to the Individual Policies (and the Amended Group Policy).   In September 2015, Defendants notified Dr. Allen by letter that his disability benefits under the Individual Policies were terminated because he was no longer disabled.  At about the same time, a separate letter notified Dr. Allen of the termination of his Amended Group Policy benefits because he was no longer disabled.

The Second Amended Complaint alleged that Defendants breached the Individual Policies by terminating Dr. Allen's disability benefits when he was still totally disabled, i.e., when he was unable to perform the substantial and material duties of his occupation as a diagnostic radiologist.  This state law claim was governed by New York substantive law and Florida procedural law. (Doc. #205, pp. 38-43.)  Prior to trial, Defendants conceded that Dr. Allen "has satisfied his burden of proof as to every element of the cause of action on which he bears the burden.  Defendants concede that they bear the burden of proof on all remaining issues and sub-issues which remain to be determined by the jury."  (Doc. #223, ¶ 7.) The issue decided by the jury, therefore, was whether Dr. Allen was disabled because he was unable to perform the

substantial and material duties of his occupation as a diagnostic radiologist as of the date his disability benefits were terminated. Addressing each of the four Individual Policies separately, the jury determined that Provident and Unum Group had proven by a preponderance of the evidence that as of August 22, 2015, Dr. Allen was no longer totally disabled within the meaning of each of the four Individual Policies. (Doc. #243, pp. 1-2.) Accordingly, the jury's verdicts established that Dr. Allen was not disabled because he could perform the substantial and material duties of his occupation as a diagnostic radiologist as of the date his disability benefits were terminated.

Dr. Allen argues, however, that we cannot really determine that this is what the jury decided. Dr. Allen asserts that three of the four Individual Policies defined Total Disability to mean that Dr. Allen was "not able to perform the substantial and material duties of your occupation" and that Dr. Allen was "under the care and attendance of a Physician." See (Doc. #87-1, p. 7; #87-2, p. 7; #87-3, p. 7.) The fourth Individual Policy defined Total Disability to mean that Dr. Allen was "not able to perform the substantial and material duties of your occupation" and that Dr. Allen was "receiving care by a Physician which is appropriate for the condition causing the disability." (Doc. #87-4, p. 7.) Dr. Allen asserts that the jury's verdicts could have been based on the lack of ongoing medical care or appropriate medical care,

not his ability to perform his occupation as a diagnostic radiologist. (Doc. #274, pp. 14-16.)

But the record does not support this argument. Dr. Allen's benefits were not terminated because of the lack of continuing or appropriate medical care. Rather, the termination letter stated: "We have determined that you are not Totally Disabled because your medical condition would not prevent you from performing your duties." (Doc. #148-2, pp. 164, 335.) In opening statement, Dr. Allen's attorney discussed the requirements of continuing/appropriate medical care. (Doc. #253, pp. 43-45.) By closing argument, Dr. Allen's attorney stated that "I don't think that's an issue," referring to those requirements. (Doc. #259, p. 196.) Defendants' attorney agreed in his closing argument that these were "not particularly relevant here." (Doc. #259, p. 169.) As agreed by the parties, the Court instructed the jury that the parties agreed "that Dr. Allen performed his obligations under the terms of the four Individual Policies through August 22, 2015." (Doc. #235, p. 6.)

The Court concludes that the issue decided by the jury was whether Dr. Allen was disabled because he was unable to perform the substantial and material duties of his occupation as a diagnostic radiologist as of the date his disability benefits were terminated. Upon consideration, the jury determined that Dr. Allen was not disabled because he could perform the substantial and

material duties of his occupation as a diagnostic radiologist as of the date his disability benefits were terminated.

**(b)   ERISA Litigation Issue**

As noted earlier, the Court must compare the issue determined in the IP Litigation with the issue to be determined in the ERISA Litigation.  The issue to be determined in the ERISA Litigation depends largely on the applicable standard of review to be applied. The parties have fundamental disagreements over the ERISA claim and they take different paths of legal analysis, but they arrive at the same standard of review – *de novo*.  After addressing some of the relevant ERISA principles, the Court will determine the issue to be resolved in the ERISA claim, and then determine whether the issue is identical to that resolved in the IP Litigation for claim preclusion purposes.

Effective November 1, 2012 and thereafter, the Amended Group Policy defined total disability to be the inability to perform any gainful occupation based on the insured's education, training or experience.  (Doc. #87-5, p. 17.) Thus, to be totally disabled under the Amended Group Policy after November 1, 2012, Dr. Allen must have been unable to perform any gainful occupation based on his education, training, or experience. In September 2015, Defendants terminated Dr. Allen's Amended Group Policy benefits, having determined Dr. Allen was no longer totally disabled within the meaning of the Amended Group Policy, i.e., even if Dr. Allen

could not perform his occupation as a diagnostic radiologist, Dr. Allen was able to perform substantial and material duties of other gainful occupations.  <u>See</u> (Doc. #148-9, p. 2.)

Dr. Allen's claim under the Amended Group Policy is brought pursuant to 29 U.S.C. § 1132(a)(1)(B), which allows an ERISA participant to bring a civil action in federal court to recover benefits under the terms of a disability plan.  ERISA does not itself prescribe the standard of review to be used by district courts to resolve challenges to benefit eligibility determinations.  <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989).  The Supreme Court, however, has recognized that <u>Firestone</u> set forth four relevant principles regarding the proper standards of judicial review:

> (1) In determining the appropriate standard of review, a court should be guided by principles of trust law; in doing so, it should analogize a plan administrator to the trustee of a common-law trust; and it should consider a benefit determination to be a fiduciary act (i.e., an act in which the administrator owes a special duty of loyalty to the plan beneficiaries).

> (2) Principles of trust law require courts to review a denial of plan benefits under a *de novo* standard unless the plan provides to the contrary.

> (3) Where the plan provides to the contrary by granting the administrator or fiduciary discretionary authority to determine eligibility for benefits, trust principles make a deferential standard of review appropriate.

14

> (4) If a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.

Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008)(internal punctuation and citations omitted.)  Neither side disagrees with these principles.

From this point, however, the parties dispute which Circuit's law the Court is obligated to follow.  Defendants urge the Court to follow the law as developed by the Eleventh Circuit, which provides the governing law for the forum court.  Dr. Allen asserts that Second Circuit law is controlling since the Amended Group Policy provides it is governed by New York law and ERISA.  As it turns out, there is little meaningful difference that impacts this case.

### (i) Eleventh Circuit ERISA Principles

The administrative ERISA benefits decision is subject to *de novo* review by a court unless the administrator was given discretion to determine eligibility or construe the terms of the plan, in which case a court determines whether the benefits decision was arbitrary and capricious i.e., whether it lacked a reasonable basis.  Harris v. Lincoln Nat'l Life Ins. Co., 42 F.4th 1292, 1294 (11th Cir. 2022)(citing Firestone Tire & Rubber Co., 489 U.S. at 115).  "The Eleventh Circuit has refined this framework

into a six-part test." <u>Williamson v. Travelport, LP</u>, 953 F.3d 1278, 1288 (11th Cir. 2020).

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

> (2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

> (3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

> (5) If there is no conflict, then end the inquiry and affirm the decision.

> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

<u>Stewart v. Hartford Life & Accident Ins. Co.</u>, 43 F.4th 1251, 1254 (11th Cir. 2022) (quoting <u>Blankenship v. Metro. Life Ins. Co.</u>, 644 F.3d 1350, 1355 (11th Cir. 2011)(citations and punctuation omitted.)).

If the six step analysis results in the application of the *de novo* standard, the district court is not limited to the administrative record, the parties may introduce additional evidence, and the district court puts "itself in the agency's place, to make anew the same judgment earlier made by the agency[.]" Harris, 42 F.4th at 1296 (citation omitted).  If the arbitrary and capricious standard applies because the policy provided the decisionmaker with discretion, the district court's review is limited to the administrative record and the "the function of the court [in such a case] is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." Harris, 42 F.4th at 1296.

> **(ii)  Second Circuit ERISA Principles**

Although missing the handy six-part test, the law of the Second Circuit is similar to that of the Eleventh Circuit.  "In the absence of a delegation of discretionary authority, the determination of the claims administrator is reviewed *de novo*." Mayer v. Ringler Assocs. Inc., 9 F.4th 78, 84 (2d Cir. 2021).

> > *De novo* review is the default standard of review for the denial of ERISA claims "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L.Ed.2d 80 (1989). If the administrator has discretion, we review its

denial pursuant to an arbitrary and capricious
standard.

*Tyll v. Stanley Black & Decker Life Ins. Program*, 857 F. App'x
674, 676 (2d Cir. 2021).  "[A] plan under which an administrator
both evaluates and pays benefits claims creates the kind of
conflict of interest that courts must take into account and weigh
as a factor in determining whether there was an abuse of
discretion, but does not make *de novo* review appropriate."
*McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 133 (2d Cir.
2008) (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)).
However, "a plan's failure to comply with the Department of Labor's
claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result
in that claim being reviewed *de novo* in federal court, unless the
plan has otherwise established procedures in full conformity with
the regulation and can show that its failure to comply with the
claims-procedure regulation in the processing of a particular
claim was inadvertent and harmless." *Halo v. Yale Health Plan,
Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 57-58 (2d Cir.
2016).  "Finally, when reviewing claim denials, whether under the
arbitrary and capricious or *de novo* standards of review, district
courts typically limit their review to the administrative record
before the plan at the time it denied the claim."  *Halo*, 819 F.3d
at 60.  A district court has discretion to admit additional
evidence, but that discretion "ought not to be exercised in the

18

absence of good cause." Id.  Good cause may exist where there was "[a] demonstrated conflict of interest in the administrative reviewing body" or where the plan's failure to comply with the claims-procedure regulation adversely affected the development of the administrative record. Id.

### (iii)  Application of Principles

Although using different analyses, both sides of this case agree that the Court engages in a *de novo* review of the denial of benefits under the Amended Group Policy.  Defendants maintain this is appropriate because the Court must begin (and end) at Step One, which requires such *de novo* review.  Dr. Allen maintains that *de novo* review is the appropriate because it is the default standard under Second Circuit precedent, and while the Amended Group Policy grants discretion, the resulting deferential standard is lost because Defendants committed multiple violations of the claims processing regulations.  For purposes of the summary judgment motion, the Court credits the allegations in the Fourth Amended Complaint that there were such violations (Doc. #250, ¶¶ 186-188) and will follow Second Circuit law which holds that in such a situation the standard of review becomes *de novo*.  Therefore, for summary judgment purposes the Court applies a *de novo* standard of review.

Under a *de novo* standard the district court puts itself in the agency's place "to make anew the same judgment earlier made by

the agency." Harris, 42 F.4th at 1296.  Thus, the issue is whether

Dr. Allen was no longer totally disabled because he could perform

any gainful occupation within the meaning of the Amended Group

Policy.  The jury verdicts in the IP Litigation have answered this

question.  Dr. Allen could perform his own occupation as a

diagnostic radiologist, which is certainly among the "any gainful

occupations" under the Amended Group Policy.  If the remaining

components of the issue preclusion standard set forth *supra* (on

pages 4 – 6) are satisfied, the prior determination that Dr. Allen

could perform his occupation as a diagnostic radiologist is binding

on the Court and parties.

Several collateral issues are raised by the parties.

Defendants argue that this ends the issue preclusion issue, and do

not discuss the remaining requirements for issue preclusion.

Rather, Defendants shift to a slightly different line of cases

aimed at preserving the right to a jury trial when legal claims

are joined with equitable claims.  Defendants assert: "[W]hen a

party has a right to a jury trial on an issue involved in a legal

claim, the judge is of course bound by the jury's determination of

that issue as it affects his disposition of an accompanying

equitable claim." (Doc. #271, pp. 4-5.)  Defendants contend that

because the jury in the IP Litigation found that Dr. Allen could

perform his own occupation and was no longer totally disabled

within the meaning of his Individual Policies, it necessarily

20

follows that Dr. Allen was not unable to perform the duties of **any gainful occupation** for which he was qualified, as required under the Amended Group Policy. (Id., p. 6.) Defendants conclude that any determination by the Court in the ERISA litigation that Dr. Allen was incapable of working in any gainful occupation for which he was qualified in August 2015 "would thus necessarily, irreconcilably, and impermissibly contradict the jury's determination . . . ." (Id., pp. 6-7.)

It is well-established that Dr. Allen is not entitled to a jury trial under ERISA because such claims are equitable in nature. See Broaddus v. Fla. Power Corp., 145 F.3d 1283, 1287 n. ** (11th Cir. 1998); Hunt v. Hawthorne Assoc., Inc., 119 F.3d 888, 907 (11th Cir.1997); Stewart v. KHD Deutz of Am. Corp., 75 F.3d 1522, 1527 (11th Cir.1996). It is also undisputed that the parties were entitled to a jury trial on the state law breach of contract claim.

When an action involves both legal and equitable claims that have common issues of fact, and a jury trial has been properly demanded with respect to the legal claims, the parties have a right under the Seventh Amendment to have the legal claims tried to a jury. Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962); Beacon Theatres, Inc. v. Westover, 359 U.S. 500 (1959); Ross v. Bernhard, 396 U.S. 531, 538-39 (1970). To safeguard this right, the general rule is that the jury must decide the legal claims prior to the court's determination of the equitable claims. Dairy Queen, Inc.,

369 U.S. at 479; Beacon Theatres, Inc. 359 U.S. at 510-11.

Richardson v. Leeds Police Dep't, 71 F.3d 801, 806 (11th Cir. 1995)("When legal and equitable causes are joined in one action, the legal issues must be decided first. To the extent that the elements of the two types of claims mirror one another, the jury's findings on the legal questions are binding in resolving the equitable issues." (citations omitted.))  The reason for this, as the Second Circuit has stated, is to prevent the court's determination of a common factual issue from precluding, by collateral estoppel effect, a contrary determination by the jury. Wade v. Orange Cnty. Sheriff's Off., 844 F.2d 951, 954 (2d Cir. 1988).  By the same token, when the jury has decided a factual issue, its determination has the effect of precluding the court from deciding the same fact issue in a different way. Id.  The Eleventh Circuit agrees:

> When legal and equitable actions are tried together, the right to a jury in the legal action encompasses the issues common to both. When a party has the right to a jury trial on an issue involved in a legal claim, the judge is of course bound by the jury's determination of that issue as it affects his disposition of an accompanying equitable claim.

Lincoln v. Bd. of Regents of Univ. Sys. of Ga., 697 F.2d 928, 934 (11th Cir. 1983).

The principle, however, is not limited to legal and equitable claims "tried together."  "It is well settled that where claims at

22

law and in equity are joined and the legal claims are tried separately by a jury, the jury's verdict operates as a finding of fact binding on the trial court in its determination of the equitable claims." BUC Intern. Corp. v. Int'l Yacht Council Ltd., 489 F.3d 1129, 1151 (11th Cir. 2007) (quoting Dybczak v. Tuskegee Inst., 737 F.2d 1524, 1526–27 (11th Cir. 1984)). There must be a factual overlap between the legal claim and the equitable claim, and the jury must necessarily have made findings with respect to the availability of any legal relief which merit deference. Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1184–85 (11th Cir. 2010). On the other hand, when legal and equitable issues are tried together and do not overlap, the jury's verdict on any equitable issues is advisory. Sherman v. Burke Contracting, Inc., 891 F.2d 1527, 1529 n. 4 (11th Cir. 1990); Brown, 597 F.3d at 1185 n.11.

The same principles are followed in the Second Circuit. C & W Leasing, Inc. v. Orix Credit Alliance, Inc., 957 F.2d 815, 821 (11th Cir. 1992)("The judge is bound by the jury's determination of a legal claim as it affects his disposition of an accompanying equitable claim," (citing Caputo v. U.S. Lines Co., 311 F.2d 413 (2nd Cir. 1963).) See also LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 432 (2d Cir. 1995) ("When two claims asserted by the same plaintiff are tried together and one is to be decided by the jury and the other by the judge, principles of collateral estoppel prevent the judge from making findings of fact contrary to those

23

of the jury."); Wade, 844 F.2d at 954; Guzman v. Bevona, 90 F.3d 641, 647 (2d Cir. 1996)("District Court, in trying the equitable claim, was not free to reject the jury's determination of facts essential to both the legal and equitable claims.").

Dr. Allen also complains about the lack of an administrative record and discovery, arguing that these preclude summary judgment. But the Court is not called upon to decide the merits of the ERISA issue, and indeed cannot do so without a full administrative record. "Just as a plan administrator must have a complete record before rendering its decision, so too must a district court have a complete record before conducting its *de novo* review under the first step in the Blankenship analysis." Williamson v. Travelport, LP, 953 F.3d 1278, 1290 (11th Cir. 2020). But the whole point of issue preclusion is that the Court does not (indeed, cannot) decide the issue anew. If the remaining requirements for issue preclusion are established, that ends the matter.

Dr. Allen bears the burden of proving he is entitled to the long-term disability benefits. Glazer v. Reliance Standard Life Ins. Co., 524 F.3d 1241, 1247 (11th Cir. 2008). The issue to be decided by the court, after a *de novo* or arbitrary and capricious review of either the administrative record or an expanded administrative record, is whether Dr. Allen was disabled because he was unable to perform the substantial and material duties of

any gainful occupation based on his education, training or experience.

**(4)   Actually Litigated Issue**

Issue preclusion only extends to an issue which was actually litigated in a prior lawsuit. Kordash, 51 F.4th at 1294. "A matter is actually litigated for purposes of issue preclusion when it is 'properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.'" Islam v. Sec'y, Dep't of Homeland Sec., 997 F.3d 1333, 1341 (11th Cir. 2021)(citations omitted.)

Based on the record summarized above, the Court finds that the issue of whether Dr. Allen was totally disabled within the meaning of the Individual Policies was actually litigated and determined at the jury trial. The Court finds that the jury verdicts that Dr. Allen was not totally disabled because he could perform his own occupation was "sufficiently firm" to satisfy this requirement. Powrzanas, 822 F. App'x at 928-29; Regan, 528 F.2d 1262, 1265 (2d Cir. 1975).

**(5)   Issue Critical and Necessary**

Issue preclusion also requires that "the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that action." Kordash, 51 F.4th at 1294. An issue is critical and necessary if it was integral to the jury's determination. Lary v. Ansari, 817 F.2d 1521, 1524 (11th Cir.

25

1987).  The issue of whether Dr. Allen was or was not totally disabled within the meaning of the Individual Policies was a critical and necessary part of the jury verdict.  Indeed, that issue was the only issue considered by the jury. This requirement of issue preclusion has therefore been satisfied.

### (6) Full and Fair Opportunity To Litigate

Issue preclusion can apply only "if the party against whom the issue was decided had a full and fair opportunity to litigate the issue in the earlier proceeding." Pemco Aeroplex, Inc., 383 F.3d at 1285 (quoting In re Southeast Banking Corp., 69 F.3d 1539, 1552 (11th Cir. 1995)).  Dr. Allen asserts that if the Court applies the jury's finding from the IP Litigation to his ERISA claim it would be akin to an advisory jury under Rule 39(c), and it would offend his due process rights as he would not be afforded a full and fair opportunity to litigate the issue underlying his claim. (Doc. #274, pp. 7-9.)  The Court does not agree.

The IP Litigation provided Dr. Allen a full opportunity to litigate the issue of whether he was disabled because he was unable to perform the substantial and material duties of his occupation as a diagnostic radiologist as of the date his disability benefits were terminated. Dr. Allen completed discovery, with no discovery disputes at the time of the jury trial.  There was also a plethora of medical and other records, including what Defendants asserted to be the administrative record.  (Doc. #223, p. 2, Defendants'

Exhibits ##12-13, 15, 17-19, 21, 23-24, 26-28, 36, 38-40, 42-49, 56, 58-60, 64-66.)

In addition, any characterization of the jury being "advisory" is incorrect. The jury decided Plaintiff's legal (breach of contract) claims in the IP Litigation, and in reaching a verdict, the jury's findings operate as finding of facts that are binding on this Court in its determination of Plaintiff's equitable claim under ERISA. See BUC Intern. Corp., 489 F.3d at 1151. There is also no obligation, as Plaintiff suggests, to inform Plaintiff of possible outcomes of the jury trial that could have rendered his ERISA claim "moot." Issue preclusion principles have been well-established before the trial. Accordingly, the Court finds that Plaintiff was provided due process to fully litigate the issue of totally disability in the IP Litigation.

In sum, Defendants have proven that issue preclusion applies in this case, and they are entitled to summary judgment as to Count I of the FAC. Defendants have established that the parties in the IP Litigation and ERISA Litigation are identical or were privies; that the issue in the IP Litigation was actually litigated; that the IP Litigation and the ERISA Litigation involve identical issues; that issue in the IP Litigation was a critical and necessary part of the judgment; and that Dr. Allen had a full and fair opportunity to litigate the pertinent issue in the IP Litigation.

## C. Count II: Request for Attorney Fees and Costs

In Count II of the FAC Dr. Allen seeks recovery of attorney fees and costs pursuant to 29 U.S.C. § 1132(g)(1).  While this does not require Dr. Allen to have been a "prevailing party" to be eligible for an attorney's fees award under § 1132(g)(1), Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 252 (2010), he must have achieved some degree of success on the merits in order for the Court to exercise its discretion and award attorney fees and costs.  Id. at 252.  Here, Dr. Allen has not achieved any degree of success on the merits of his ERISA claim, and is therefore not eligible for an award of attorney fees and costs.

Accordingly, it is now

**ORDERED:**

1. Defendants' Motion for Summary Judgment on Counts I and II of the Fourth Amended Complaint (Doc. #271) is **GRANTED.**

2. The Clerk of the Court shall enter judgment as follows:

    (a)  In favor of defendants Provident Life and Casualty Insurance Company and Unum Group as to Count I of the Second Amended Complaint (Doc. #87) pursuant to the Verdict (Doc. #243) of the jury, and plaintiff shall take nothing.

    (b)  In favor of defendants First Unum Life Insurance Company and Unum Group as to Count II of the Fourth

Amended Complaint (Doc. #250) pursuant to this Opinion and Order, and plaintiff shall take nothing.

3. The Clerk shall also terminate any pending deadlines and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this __6th__ day of February, 2023.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record